831 F.2d 410
 18 Collier Bankr.Cas.2d 34, Bankr. L. Rep. P 72,032,
5 UCC Rep.Serv.2d 354
In re MEYERTECH CORP., Debtor.
SOUTHEASTERN SPRINKLER COMPANY, INC., Appellant,
v.
MEYERTECH CORP.
 No. 87-1006.
 United States Court of Appeals,
Third Circuit.
 Argued June 18, 1987.
Decided Oct. 14, 1987.
 
 Joan A. Yue (argued), Pepper, Hamilton & Scheetz, Philadelphia, Pa. (Ben G. Leaphart, Love, Thornton, Arnold & Thomason, Greenville, S.C., of counsel), for appellant.
 John C. Fenningham (argued), Corr, Stevens & Fenningham, Trevose, Pa., Joseph R. Livesey (argued), Philadelphia, Pa., for appellee.
 Before SEITZ and MANSMANN, Circuit Judges, and BISSELL, District Judge.*OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 This appeal arises from a decision of the district court which affirmed in part and vacated and remanded in part a judgment of a bankruptcy court 57 B.R. 606 (1986), in an adversary proceeding entered in favor of the debtor.
 
 
 2
 At the outset of our review, we decide that despite the presence of a partial remand, the district court's order was a final order ripe for appellate adjudication.
 
 
 3
 Second, we hold that the district court, sitting in appellate review of the bankruptcy court's findings of fact, properly applied the clearly erroneous standard defined by Bankr.Rule 8013 since the matter before it was a core proceeding within the meaning of 28 U.S.C. Sec. 157(b)(2) (1984).
 
 
 4
 Third, we agree with the district court's affirmance of the bankruptcy judge's finding that the appellant's request for damages under the total cost theory was inappropriate since an alternate and reliable means of assessment was available to compensate for the losses suffered as a result of the breach of warranty of merchantability.
 
 
 5
 We find, however, that the portion of the district court order vacating the award and remanding to the bankruptcy court was improper. The court erred in failing to note that the Rules of Civil Procedure applicable to bankruptcy proceedings provide that an issue not raised by the pleadings which has nonetheless been tried by consent of the parties shall be treated as if it had in fact been raised by the pleadings. We find this procedural mandate to be applicable, and, therefore, we will remand to the district court for reinstatement of the bankruptcy court's award in favor of the debtor.
 
 I.
 
 6
 Southeastern Sprinkler Company, Inc. ("Southeastern"), is engaged in the business of designing and installing industrial sprinkler systems. Southeastern was involved in an ongoing business relationship with Meyertech Corporation, a supplier of sprinkler system equipment. In the course of its dealings, Meyertech approached Southeastern to solicit orders for a recently developed sprinkler system fitting. Meyertech represented that its new product had been approved and accepted by industry organizations and associations.
 
 
 7
 Southeastern purchased Meyertech's fittings and incorporated them in sprinkler systems in a number of their construction projects. Sometime after the newly installed systems were activated, Southeastern began receiving complaints from general contractors and owners of the projects about water damage apparently caused by leaks in the sprinkler system. Initially unable to determine the cause of the leaking, Southeastern limited its response to repair of the water-damaged ceilings, as per its contractual responsibility.
 
 
 8
 Investigation of the origin of the leak revealed it to be the area of the fittings supplied by Meyertech. Accordingly, Southeastern informed Meyertech and requested its assistance in remedying the problem. Meyertech acknowledged that the leakage was caused by the composition of the gaskets, a component of the fittings supplied, which could be corrected by replacement. Meyertech supplied Southeastern with new gaskets to remedy the problem.
 
 
 9
 Southeastern then set to the task of removing and replacing the previously installed gaskets. Southeastern accomplished this replacement in conjunction with repairing the ceilings damaged by the leaking fittings.
 
 
 10
 Subsequently, on August 28, 1981, Meyertech petitioned for reorganization under Chapter 11 of the Bankruptcy Code. In response, Southeastern filed a proof of claim in the amount of $273,627 for the losses incurred in construction projects where Meyertech's product was utilized as a component of the Southeastern sprinkler system installation.
 
 
 11
 Meyertech filed an objection to the proof of claim and, referring to its scheduling of a disputed claim of $103,000 to Southeastern, denied any obligation owing to Southeastern. In its objection, Meyertech additionally alleged that Southeastern owed $43,032.22 on an open account for goods sold and delivered, i.e., the replacement fittings. The filing of this objection commenced an adversary proceeding as provided by Bankr.Rules 3007 and 7001.
 
 
 12
 Thereafter, the parties entered into a stipulation acknowledging a potential liability by Meyertech to Southeastern in the amount of $103,000, setoff by the $43,032.32 owed as an account receivable. The provisions of the stipulation were viewed by the parties as capping the extent of the bankrupt estate's obligation to Southeastern.
 
 
 13
 The parties also recognized the possibility that Southeastern may have a products liability claim against Meyertech's insurance carrier for recovery of all or part of a judgment against Meyertech. With an eye towards this possibility, Southeastern filed an action against Meyertech in the federal district court in South Carolina, Southeastern's situs of incorporation. Counsel for the parties subsequently agreed that Southeastern would pursue its claim in the form of an adversary proceeding in bankruptcy court and the South Carolina action was withdrawn. Southeastern then filed a complaint in the bankruptcy court which characterized its losses as required compensation for parties who suffered loss of use and damage to their property as a result of the leakage and the cost to replace the defective fittings and gaskets. In its answer, Meyertech generally denied the allegations set forth in Southeastern's complaint.
 
 
 14
 The adversary proceeding was thereafter tried in the bankruptcy court, resulting in an opinion and order finding a breach of implied warranty of merchantability on the part of Meyertech. The bankruptcy judge, however, disallowed Southeastern's theory of recovery based upon the total cost method[1] and, instead, awarded damages in the amount of $11,912.50, representing the cost of replacing the leaking fittings. The bankruptcy judge then offset the amount listed by Meyertech as an account receivable from Southeastern, resulting in a judgment of $31,119.82 in favor of Meyertech.
 
 
 15
 Southeastern filed a notice of appeal to the district court urging vacation of the award to Meyertech. Contending the matter was not a core proceeding as defined by 28 U.S.C. Sec. 157(b)(2), the creditor requested the district court to render additional findings of fact consistent with its de novo power of review of non-core matters.
 
 
 16
 The district court denied the request for de novo review, affirmed the bankruptcy court's finding that Southeastern's total cost theory as the proper measure of damages to be applied was improper, and, accordingly, found damages were correctly assessed on the cost of replacement theory. However, the district judge remanded for reconsideration and clarification the propriety of the favorable award to Meyertech based upon application of the setoff. This appeal followed.
 
 
 17
 In regard to our standard of review of this matter, we review the district court's determination regarding the proper measure of damages for a breach of warranty of merchantability of goods sold and delivered and found to be unfit for their intended use. As a corollary we examine the standard of review employed by the district court in its review of the bankruptcy judge's decision on the issue of the measure of damages. This requires interpretation and application of legal precepts implicating an exercise of our power of plenary review.
 
 
 18
 Analysis of the portion of the district court's order vacating the award in favor of the debtor-appellee and remanding to the bankruptcy judge requires a determination that this activity was procedurally proper, a legal question also mandating plenary review.
 
 II.
 
 19
 A threshold concern is the jurisdiction of this court to entertain this appeal. Section 158(d) of title 28 authorizes courts of appeals to hear appeals from final judgments entered by the district court in their appellate capacity.[2] At issue is whether the requisite of finality has been satisfied in this matter in light of the portion of the district court opinion remanding the matter to the bankruptcy judge for clarification of the setoff issue.
 
 
 20
 In the context of bankruptcy cases, the definition of a final order is less than crystalline. Analysis of finality in these proceedings differs from litigation in an ordinary civil matter. In bankruptcy matters we have consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally. Matter of Marin Oil, Inc., 689 F.2d 445 (3d Cir.1982), In Re Amatex, 755 F.2d 1034 (3d Cir.1985).
 
 
 21
 In Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981), we enunciated a finding of finality in bankruptcy matters when "nothing remains for the district court to do." Also, Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).
 
 
 22
 The application of this less stringent definition of finality in bankruptcy cases is not without limitation. In a recent case involving a district court's partial remand to a bankruptcy judge, we qualified our assumption of the pragmatic approach and referred to the traditional attitude of general reluctance to adopt an expansive interpretation of finality. In Re Brown, 803 F.2d 120 (3d Cir.1986). In Brown we found that a district court order remanding to the bankruptcy court for a determination of damages was not a final order appealable to our court. We premised our holding on the fact that the order affected neither the debtor's assets nor the relationship between the creditors.
 
 
 23
 Our jurisdiction is properly invoked by balancing a general reluctance to expand traditional interpretations regarding finality and a desire to effectuate a practical termination of the matter before us. Factors to evaluate in this weighing process are the impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclusive effect of our decision on the merits on further litigation, and whether the interest of judicial economy would be furthered. Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir.1984).
 
 
 24
 In applying these factors to the dispute now before us, we conclude that the appeal is properly entertained at this time. First and most important, since the proper measure of damages to be applied is the primary issue, our decision will undoubtedly impact the assets of the estate. As well, the question on remand concerns the correctness of the award of the setoff, and our conclusion in regard to its propriety will further influence the balance of the estate. A decision now will also preclude the necessity of further activity by the fact-finding tribunal, will obliterate the need for more litigation and serves the ever-prevailing interest of judicial economy.
 
 III.
 
 25
 Having defined our scope of review, we turn now to whether the district court, in its appellate capacity, applied the proper standard in reviewing the bankruptcy court's decision.
 
 
 26
 Southeastern contends that the basis for its appeal to the district court mandated application of the de novo review standard provided by 28 U.S.C. Sec. 157(c)(1). Southeastern argues that the subject matter of the adversary proceeding should be characterized as "non-core." Thus, under the provisions of this section, the bankruptcy judge's jurisdiction is limited to submitting proposed findings of fact and conclusions of law to the district court; the district court is then empowered to review them de novo and enter the appropriate final order or judgment on the matter. Classifying this proceeding as non-core would subject the factual disputes to review de novo rather than to review under the clearly erroneous standard of Bankr.Rule 8013 for core proceedings.[3] Southeastern does not raise constitutional challenges in this regard.
 
 
 27
 In its argument, Southeastern classifies its claim against the bankrupt estate as a product liability cause of action based upon a breach of warranty, appropriate to state law considerations and subject to de novo review. Conceding the provision of 28 U.S.C. Sec. 157(b)(3) that the existence of a state law claim is not conclusive of a non-core proceeding, Southeastern submits that the terms of the stipulation previously entered into between the parties remove the matter from the realm of traditional debtor-creditor proceedings. The provisions of the stipulation, capping the extent of the estate's liability and triggering this obligation only in the event of a failure of recovery against Meyertech's product liability insurance carrier, are seen as definitive of a non-core proceeding.[4]
 
 
 28
 Southeastern also disputes that its activity in choosing the bankruptcy court forum forecloses any argument against identifying its claim as a core proceeding since at the time the action was filed, the interim bankruptcy rules automatically referred the case to the bankruptcy system.[5] Southeastern does not deny the jurisdiction of the Bankruptcy Court, rather, it insists that filing its claim within its parameters was only indicative of compliance with mandated procedural rules.
 
 
 29
 In response, Meyertech relies upon the following specific language of 28 U.S.C. Sec. 157(b)(2), defining a core proceeding:
 
 
 30
 [c]ore proceedings include but are not limited to
 
 
 31
 * * *
 
 
 32
 (B) allowance or disallowance of claims against the estate ...;
 
 
 33
 (C) counterclaims by the estate against persons filing claims against the estate ...;
 
 
 34
 (O) other proceedings affecting liquidation of assets of the estate....
 
 
 35
 Meyertech asserts that the nature of this claim is firmly entrenched in matters affecting the liquidation of the assets of the estate. Accordingly, the district court's review should be limited to an application of the "clearly erroneous" standard outlined in Rule 8013 as contrasted to the de novo standard of Sec. 157(c)(1).
 
 
 36
 A review of the history of the jurisdiction of the bankruptcy court assists in the resolution of what is or is not a core proceeding. With the passage of the Bankruptcy Reform Act of 1978, Congress vested the district courts with original and exclusive jurisdiction of all cases under title 11. 28 U.S.C. Sec. 1471 (repealed). The district court also had "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." Section 1471(b) (repealed). Section 1471(c) (repealed) then conferred the bankruptcy court within the district where the title 11 case commenced with all of the jurisdiction granted to the district court by Sec. 1471.
 
 
 37
 Congressional concern that the scope of the jurisdiction accorded the bankruptcy court would meet with constitutional roadblocks came to fruition in the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In that case a debtor that filed for reorganization commenced suit in bankruptcy court against a defendant "for alleged breaches of contract and warranty, as well as for alleged misrepresentation, coercion, and duress." Id. at 56, 102 S.Ct. at 2864. On appeal the Supreme Court held that the bankruptcy court could not constitutionally adjudicate the debtor's state law claim because the jurisdiction given to the bankruptcy courts under Sec. 1471 of the 1978 Act was too broad.[6]
 
 
 38
 In response Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act") and its jurisdictional provisions became applicable to cases, such as the instant appeal, which were pending on the date of the passage of the statute. The 1984 Act amended or added several provisions of title 28 to grant the bankruptcy court jurisdiction which did not run afoul of constitutional prohibitions, among which was 28 U.S.C. Sec. 157 relating to core proceedings. 1 Colliers on Bankruptcy paragraphs 3.01 et seq. (15th ed. 1987).
 
 
 39
 Under 28 U.S.C. Sec. 157(a) of the 1984 Act each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 shall be referred to the bankruptcy judges for the district. By local rule the District Court for the Eastern District of Pennsylvania accomplished this referral.[7]
 
 
 40
 Section 157(b)(1) authorizes the bankruptcy judge to hear and enter final orders on all core proceedings arising under title 11. Section 157(c)(1) permits a bankruptcy judge to hear non-core matters that are related to a case under title 11, but, absent consent of all the parties to the dispute, the bankruptcy judge may not enter final orders in those disputes but must submit proposed findings of fact and conclusions of law to the district court for entry of final orders. In Re Franklin Computer Corp., 50 B.R. 620 (Bankr.E.D.Pa.1985).
 
 
 41
 Section 157(b)(2) provides a non-exhaustive list of core proceedings, namely (1) all matters concerning the administration of the bankruptcy estate, (2) allowance or disallowance of claims against the estate, (3) counterclaims by the estate against persons filing claims against the estate, and (4) other provisions affecting liquidation of the assets of the estate. 28 U.S.C. Sec. 157(b)(2)(A); (b)(2)(B); (b)(2)(C); and (b)(2)(O).
 
 
 42
 It is difficult to perceive of a proceeding which would not fall under the all-encompassing language of either Sec. 157(b)(2)(A) or Sec. 157(b)(2)(O),[8] but we are cautioned that an expansive interpretation of these provisions may lead to some seemingly incorrect and overbroad results regarding core proceedings. Collier at 3-44.
 
 
 43
 A decision of the Court of Appeals for the Ninth Circuit admonished against such an overbroad interpretation of core proceedings, fearing it might allow the bankruptcy judge to enter final judgment on matters previously found to be an unconstitutional exercise of jurisdiction under Marathon. In Re Castlerock Properties, 781 F.2d 159 (9th Cir.1986). In Castlerock the court held that a debtor's state law contract claim did not fall into either of the catchall provisions for core proceedings, i.e., Sec. 157(b)(2)(A) or Sec. 157(b)(2)(O). As authority, the court cited a series of bankruptcy court decisions from various jurisdictions likewise holding that state law contract claims, that could have arguably fit into the catchall paragraphs, were non-core proceedings. See K-Rom Construction Corp. v. Bayling, 46 B.R. 745 (Bankr. S.D.N.Y.1985); Mohawk Industries, Inc. v. Robinson Industries, Inc., 46 B.R. 464 (Bankr.D.Mass.1985); Cameron v. Anderson, 50 B.R. 175 (Bankr.D.N.D.1985); In re Morris Electric Co., Inc., 47 B.R. 234 (Bankr.N.D.Ind.1985). We note again here that Southeastern has not raised constitutional challenges but only the application of these rules to the facts of this case.
 
 
 44
 Bankruptcy decisions arising from the federal bankruptcy courts in Pennsylvania have also wrestled with this core/non-core distinction. See In re Allegheny, Inc., 68 B.R. 183 (Bankr.W.D.Pa.1986), (referencing a number of bankruptcy court decisions and concluding that no clear consensus exists).
 
 
 45
 Review of the cases struggling for a precise point of delineation between core and non-core proceedings reveals a common factor which clearly distinguishes them from the present matter--they all refer to cases commenced by the debtor either prior to or post-bankruptcy petition. Herein, we are confronted with an action brought by a creditor and we have found no cases where the core/non-core issue has arisen in this context.
 
 
 46
 We conclude that the reason for the dearth of cases on this converse situation is premised on the fact that this state law contract matter was initiated when Southeastern filed its proof of claim. This is not a situation akin to the abovementioned cases where a debtor brought suit against either a creditor or a third party, but, rather, is an action which has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy.
 
 
 47
 "Claim" is defined in 11 U.S.C. Sec. 101(4)(A) as: "Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or...." Clearly Southeastern's breach of warranty action falls within this definition since it represents a right to payment for losses suffered as a result of Meyertech's supplying unfit goods. We are thus persuaded that 28 U.S.C. Sec. 157(b)(2)(B), defining allowance or disallowance of claims against the estate as a core proceeding, governs the outcome of this issue. We are aware that virtually every bankruptcy case will entail the alteration or nullification of some state-created right. In Re Franklin Computer Corp., id. As Justice White instructs in his dissenting opinion in Marathon:
 
 
 48
 The routine in ordinary bankruptcy cases now, as it was before 1978, is to stay actions against the bankrupt, collect the bankrupt's assets, require creditors to file claims or be forever barred, allow or disallow claims that are filed, adjudicate preferences and fraudulent transfers, and make pro rata distribution to creditors, who will be barred by the discharge from taking further actions against the bankrupt. The crucial point to be made is that in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy --claims for goods sold, wages, rent, utilities and the like. "[T]he word debt as used by the Act is not confined to the technical common law meaning ... but it extends to liabilities arising out of breach of contract ... to torts ... and to taxes owing to the United States or state or local governments." 1 W. Collier on Bankruptcy p 1.14 p. 88 (14th ed. 1976). Every such claim must be filed and its validity is subject to adjudication by the bankruptcy court. The existence and validity of such claims recurringly depends on state law. Hence, the bankruptcy law is constantly enmeshed in state law questions.
 
 
 49
 The new aspect of the Bankruptcy Act of 1978, in this regard, therefore, is not the extension of federal jurisdiction to state law claims, but its extension to particular kinds of state law claims, such as contract cases against third parties or disputes involving property in the possession of a third party.
 
 
 50
 Id. 458 U.S. at 96, 102 S.Ct. at 2884 (White, J., dissenting) (emphasis added).
 
 
 51
 We thus conclude that Southeastern's cause of action based upon state law is correctly characterized as a claim against the bankrupt estate of Meyertech. As such, the litigation of its merits is a core proceeding under the bankruptcy judge's jurisdiction as provided by Sec. 157(b)(2)(B). The filing of the claim by Southeastern created this action in bankruptcy court, and this is the proper forum for its adjudication. By its very nature it fits directly under the more specific definition of a core proceeding under Sec. 157(b)(2)(B), rather than under the umbrella provisions of Sec. 157(b)(2)(A) or (b)(2)(O).[9]
 
 
 52
 Southeastern's contention that consent to the bankruptcy court's jurisdiction cannot be inferred from its initiation of this action by proof of claim is indeed a strained argument. This appeal entails a title 11 matter and regardless of how or where commenced in the federal court system, it would have been referred to the jurisdiction of the bankruptcy court. We do not infer any conclusions of law from Southeastern's filing of the proof of claim; in fact, we acknowledge that Southeastern had no choice as to its forum of adjudication since its cause of action is a case arising under title 11. The breach of warranty action delineates a claim against the bankrupt estate of Meyertech, its allowance or disallowance being a core proceeding under Sec. 157(b)(2)(B).
 
 
 53
 We therefore find that the district judge applied the proper standard of "clearly erroneous" in scrutinizing the bankruptcy court's findings rather than granting de novo review.
 
 IV.
 
 54
 Turning to the primary question of the proper measure of damages to be applied in this case, we do not identify any serious dispute that the goods supplied by Meyertech, being unfit for their intended use, failed to conform to Uniform Commercial Code standards of merchantability. UCC 2-314, 13 Pa.C.S.A. Sec. 2314. The controversy is the method of calculating the damages resulting from the breach. Southeastern argues that the cost of replacement was insufficient compensation for the losses it suffered and, instead, asserts that it proved the predicates necessary for application of the more-inclusive total cost theory.[10]
 
 
 55
 Southeastern's specific claim for damages in the amount of $404,404 is premised on costs incurred as a result of construction overruns caused by the need to replace the unfit gaskets and repair the damage caused by the leaking.
 
 
 56
 In his assessment as to the proper measure of damages to be applied, the bankruptcy judge reviewed the provisions of the Pennsylvania UCC statute and concluded that Sec. 2714(c),[11] relating to incidental and consequential damages, dictated the means of their proper calculation. He then arrived at a final figure by determining the cost of replacing the faulty fittings. The bankruptcy judge did not explicitly state under which paragraph of Sec. 2715 he fashioned his remedy; however, we can presume that his calculation was rendered under 2715(b) as follows:
 
 
 57
 * * *
 
 
 58
 * * *
 
 
 59
 (b) Consequential damages.--Consequential damages resulting from the breach of the seller include:
 
 
 60
 (1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;....
 
 
 61
 * * *
 
 
 62
 * * *
 
 
 63
 The bankruptcy judge expressly rejected Southeastern's theory of damages based upon the total cost theory, finding it failed to meet the requirements for its application as stated in John F. Harkins Co., Inc. v. School District of Philadelphia, 313 Pa.Super. 425, 460 A.2d 260 (1983):
 
 
 64
 (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses.
 
 
 65
 Id. at 431, 460 A.2d 260, quoting Boyajian v. United States, 191 Ct.Cl. 233, 423 F.2d 1231 (1970).
 
 
 66
 After hearing the testimony of Mr. Mills, president of Southeastern, the bankruptcy court found insufficient evidence to support Southeastern's bid estimates on the construction jobs and thereby held the total cost method to be inappropriate for use in this matter.
 
 
 67
 Applying the clearly erroneous standard of review, the district court noted the factfinder's prerogative to render judgments as to credibility of witnesses and decided that "the Bankruptcy Court was proceeding on a supportable factual predicate in concluding that the total cost method was in apropos." Southeastern Sprinkler Company v. Meyertech Corporation, Adversary No. 83-2301, bench opinion (E.D.Pa. Nov. 26, 1986) at p. 15. The district court defined the issue in this regard as not whether the factfinder could have concluded that the testimony advanced by the appellant could have been viewed as supportive of the reasonableness of their bid estimates, but rather whether the factfinder from a review of this record could have come to a different conclusion. The district court found that the different conclusion reached by the bankruptcy judge was not clearly erroneous, and, accordingly, declined to disturb the findings on review.
 
 
 68
 On appeal, Southeastern contends that Secs. 2714 and 2715 allow recovery for consequential damages if they are reasonably foreseeable, and asserts that its claimed construction cost overruns constitute legally cognizable damages under the total cost theory.
 
 
 69
 Southeastern cites Meyertech's familiarity with the nature of their business, evidenced by its development of the fitting specifically for the fire protection market and its active promotion of this product as indicia of foreseeability. Additionally noted was Meyertech's specific knowledge of the use to which the purchased fittings would be put and the requirements surrounding the installation of the sprinkler system. These factors, Southeastern argues, provide abundant evidence of the foreseeability requisite entitling it to recovery for consequential damages.
 
 
 70
 In regard to the causation question, Southeastern refers to the testimony of Mr. Mills asserting that the root of the costs incurred was the defective fitting. Testifying that in the normal course of business it was Southeastern's experience that actual job costs were within five percent of their estimated costs, Mr. Mills stated that the sixty percent increase of actual over estimated costs in the construction projects here was directly attributable to the unmerchantability of the goods supplied by Meyertech.[12]
 
 
 71
 Meyertech maintains that the total cost theory was properly disallowed as Southeastern failed to meet its burden of proof invoking the application of this particular measure of damages.
 
 
 72
 We agree that the test set forth in Harkins is dispositive of whether Southeastern's request for damages under the total cost method represents a viable claim, and also concur that Southeastern has failed to meet the requirements of this test.
 
 
 73
 A brief sampling of cases allowing utilization of the total cost theory is illustrative of why its application is contraindicated herein.
 
 
 74
 In Larry Armbruster & Sons v. State Public School Building Authority, 95 Pa.Comm.Ct. 310, 505 A.2d 395 (1986), damages were assessed on the total cost theory for increased labor and overhead costs incurred when changes in construction specifications resulted in an extra 24 weeks of labor. The damages were calculated by estimating the total man hours per week and multiplying that number by the actual costs for that period of time. These costs were verified by an independent certified public accountant who arrived at an almost identical figure for the labor costs. In light of the nature of the particular loss making it highly impracticable to calculate damages in some other fashion and where the loss figure was substantiated by reliable evidence, the theory was properly applied.
 
 
 75
 In Baltimore Contractors, Inc. v. Albro Metal Products Corp., No. 79-4231 and No. 81-3887 (E.D.Pa., filed September 13, 1984), damages based on the total cost theory were appropriately awarded where a sub-contractor incurred excess labor costs and overhead caused by the general contractor's acceleration and resequencing of their work. Concluding that the subcontractor was forced to perform its tasks in an inefficient manner due to the rescheduling, the court awarded damages for the loss of labor productivity citing the absence of another method to calculate damages with a reasonable degree of certainty.
 
 
 76
 Also, before the total cost method can be applied the plaintiff must establish a reasonable basis for allocating its increased costs to the defendant. Although mathematical certainty is not required, at the minimum, some reasonably accurate evidence of the costs must be provided. E.C. Ernst, Inc. v. Koppers Co., Inc., 626 F.2d 324 (3d Cir.1980).
 
 
 77
 This aura of implausible means for assessing damages is not present herein. The man-hour requirement for replacement of the fitting was authoritatively testified to by Mr. Mills. The susceptibility of these figures to certain calculation removes this case from the arena of uncertain mathematics where the total cost theory has been effectively applied. The bankruptcy court's mathematical activity in multiplying the number of fittings replaced by the accompanying labor costs incurred and adding the cost of the replacement parts was an appropriate exercise of its authority to award damages.
 
 
 78
 We, therefore, conclude that the proper foundation for application of the total cost theory was not established by Southeastern by virtue of the availability of an alternative and reliable measure of damages, i.e., the cost of replacement as calculated by the bankruptcy judge.
 
 V.
 
 79
 We now address whether the setoff of the replacement damages by the account receivable was a proper procedural exercise of the bankruptcy judge's authority to award damages under the circumstances present here. Southeastern argues that Meyertech did not effectively raise the amount owing by either a counterclaim or a setoff and that the objection to the proof of claim was insufficient to preserve the issue once the adversary proceeding was commenced. Southeastern further objects to the remand of the issue of the account receivable as it presented a question of law for the district court to decide.[13]
 
 
 80
 We believe that the procedural posture of the award in favor of Meyertech merits careful scrutiny.
 
 
 81
 Meyertech argues that by filing an objection to Southeastern's proof of claim and thereby noting the presence of the account receivable, it fulfilled the pleading requirements entitling it to an affirmative judgment.
 
 
 82
 In our review, we found a technical assertion of a counterclaim for recovery notably absent from Meyertech's pleadings. We conclude, however, that Fed.R.Civ.P. 15(b), adopted by Bankr.Rule 7015, remedies this and, in conjunction with the application of Fed.R.Civ.P. 54(c) (relating to demands for judgment), supports the entry of the judgment in favor of Meyertech.
 
 Rule 15(b) reads as follows:
 
 83
 * * *
 
 
 84
 * * *
 
 
 85
 (b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings....
 
 
 86
 * * *
 
 
 87
 * * *
 
 
 88
 In determining the applicability of this provision here we examine the contents of the pleadings actually filed and the record of the proceeding below for reference to the account receivable.
 
 
 89
 Paragraph (7) of the objection to Southeastern's proof of claim recited: "Debtor listed an account receivable owing to Southeastern Sprinkler Co., of $43,032.32 on an open account for goods sold and delivered. Attached hereto as Exhibit A is a true copy of Debtor's account ledger card relating to creditor."
 
 
 90
 Accordingly, in its concluding prayer for relief in the objection, Meyertech requested as follows:
 
 
 91
 WHEREFORE, debtor respectfully requests that your Honorable Court disallow the proof of claim filed by SOUTHEASTERN SPRINKLER CO., or in the alternative, allow such claim, if any, as this Court determines after hearing subject to accounts receivable setoff pursuant to Section 502(b)(3) of the Bankruptcy Code.[14]
 
 
 92
 Appendix at A466.
 
 
 93
 Reference to the account receivable also occurred during litigation of the matter. At trial, the following testimony was elicited from George Meyer, president of Meyertech:
 
 
 94
 [W]e continued to ship Southeastern Sprinkler the fittings ... and had shipped in the amount of, I think, $45,000 ... worth of fittings to him and were not paid for them.
 
 
 95
 There was no objection to the relevancy of this testimony by opposing counsel, nor was Mr. Meyer cross-examined on this point.
 
 
 96
 At the conclusion of Meyer's testimony, counsel for Meyertech addressed the court as follows:
 
 
 97
 MR. FENNINGHAM: Your Honor, to perhaps clarify one point that came out on testimony, the debtor had an account receivable owing to it from Southeastern which was addressed in a stipulation between the parties; that is, Meyertech and Southeastern, and I raised a point with Southeastern's counsel, Ms. Yue, that the parties filed--I filed an application on behalf of the debtor. Attached to that was this stipulation dated September 22, 1982, and, your Honor, so that you're aware, you entered an order dated June 15, 1983, on the docket that approved this stipulation between the parties; and, essentially, the point I'm raising here today is that the $43,032.32 account receivable owing to Meyertech was set forth in that stipulation.
 
 
 98
 THE COURT: And was agreed upon as owing?
 
 
 99
 MR. FENNINGHAM: Yes, your Honor.
 
 
 100
 THE COURT: So that if the finding of the Court is in favor of the plaintiff, there is to be a credit of the $43,000?
 
 
 101
 MR. FENNINGHAM: Yes, and that stipulation addresses the liability of Meyertech, and I won't belabor this record; but it is part of Meyertech's bankruptcy proceeding file.
 
 
 102
 THE COURT: All right.
 
 
 103
 We find that the various references to the account receivable contained in the pleadings, substantiated by the trial testimony, support a finding that the issue of the account receivable was adequately presented and adjudicated under Rule 15(b) without objection from Southeastern.
 
 
 104
 In D. Federico, Inc. v. New Bedford Redevelopment Authority, 723 F.2d 122 (3d Cir.1983), we decided that although issues may not have been raised in the pleadings, if by either express or implied consent of the parties they have been tried, amendment to the pleadings to conform to the evidence is not barred. Dealing specifically with the type of pleadings at issue here, in In Re Zerodec Megacorp, Inc., 60 B.R. 884, 886 (Bankr.E.D.Pa.1985), the bankruptcy court held,
 
 
 105
 [W]hen a party asserts a right of setoff, it is asserting a permissive counterclaim. The record of the proceedings shows that while [the creditor] did not affix the label of "setoff" to the pleadings, it pled sufficient facts to apprise [the debtor] of his contention and the case was litigated as though the claim was before it.[15]
 
 
 106
 Rule 15(b) provides that conforming amendments to the pleadings may be made by motion by any party and at any time, but that the failure to so amend will not affect the result of the trial of the issue not raised by the pleadings. We conclude, therefore, that remand to effectuate the appropriate amendments herein is unnecessary.
 
 
 107
 We here construe Fed. 15(b) in tandem with Fed.R. 54(c). Rule 54(c) (adopted by Bankr.Rule 7054) states: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." See, In re Herman Hassinger, Inc., 41 B.R. 787 (Bankr.E.D.Pa.1984) (trustee awarded damages for consequential losses despite no request for damages); also, ACandS, Inc. v. Aetna Casualty & Surety Company, 576 F.Supp. 936 (E.D.Pa.1983), aff'd in part, vacated in part, 764 F.2d 968 (3d Cir.1985) (Rule 54(c) authorizes entry of a final judgment granting relief to which a party is entitled even though they failed to demand such relief in the complaint).
 
 
 108
 We caution, however, that our liberal interpretation and application of the Federal Rules of Civil Procedure are not without limitation and we must be conscientious of fundamental notions of due process when allowing liberality of pleading. Evans Products Co. v. West American Insurance Company, 736 F.2d 920 (3d Cir.1984). We have permitted consideration of the account receivable here only because we believe the issue has been squarely presented without surprise or resulting prejudice to the appellant.
 
 
 109
 We conclude, therefore, that the district court's remand concerning the propriety of the affirmative award was unnecessary as the issue has been fully tried without objection by Southeastern. Paragraph (1) of the order of the district court will be vacated and the matter remanded for reinstatement of the award in favor of Meyertech.
 
 
 
 *
 Honorable John W. Bissell of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Southeastern's claim for alleged damages had by now escalated to $404,404.55, predicated on costs incurred for overruns on the construction projects where the repairs were necessitated
 
 
 [2]
 This adversary proceeding was filed in 1983, during the interim period of the enactment date of the Bankruptcy Act of 1978 and its effective date of April 1, 1984. During that transitional phase the courts were vested with the jurisdictional authority which they would have after that effective date. In re Comer, 716 F.2d 168 (3d Cir.1983)
 
 
 [3]
 Rule 8013 reads as follows:
 On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
 
 
 [4]
 Southeastern's additional contention that the stipulation contemplating that the dispositive litigation on the merits of this claim would occur in the district court in South Carolina removes this case from an obvious classification as a core proceeding must be addressed. Southeastern states that the stipulation converts this bankruptcy adversary proceeding to a standard state law claim and the fact that the action was discontinued and repositioned in the bankruptcy court did not take away the basic non-core flavor of the proceeding
 We question the continuing viability of the stipulation as a definitive statement of the rights and liabilities of the parties. Southeastern argues that the purpose of this agreement was to effectuate a means by which the product liability matter could be resolved in district court. For reasons unclear from the record, the South Carolina action was discontinued. The purpose of the stipulation having been eradicated, we can no longer be concerned with its contents. We conclude the dropping of the South Carolina action worked an invalidation of the stipulation and thereby removed its provisions from our further consideration.
 
 
 [5]
 Local Interim Rule (c)(1), adopted in the Eastern District on December 21, 1982 by Order of the Chief Judge, stated:
 (c) Reference to Bankruptcy Judges
 All cases under title 11 and all civil proceedings arising from title 11 or arising in or related to cases under title 11 are referenced to the bankruptcy judges of this district. See Matter of George Woloch Co., Inc., 49 B.R. 68 (Bankr.E.D.Pa.1985).
 
 
 [6]
 The Supreme Court ordered that its ruling be applied prospectively and stated an effective date several months hence. After the last of various extensions of the stay of that ruling expired, the district courts across the country adopted an Emergency Rule that was suggested by the Judicial Conference. This rule gave the bankruptcy judges authority to continue hearing bankruptcy matters
 
 
 [7]
 See n. 5, supra
 
 
 [8]
 In our discussion of our jurisdiction to entertain this appeal, we previously acknowledged that our decision will have an impact on the assets of the bankrupt estate. See p. 10, infra
 
 
 [9]
 We note that having concluded that the account receivable was effectively pled by Meyertech as a counterclaim, without question, this matter is also a core proceeding under Sec. 157(b)(2)(C). However, to utilize this conclusion as definitive of this issue without further comment as to the core/non-core question seemed unfair due to the ex post facto nature of the determination of the propriety of the counterclaim
 
 
 [10]
 The only jurisdictions with significant interest in having its law applied in this matter are Pennsylvania and South Carolina. There are no substantive differences in their respective enactments and interpretations of the provisions of the UCC and the parties do not dispute the application of Pennsylvania law in this regard
 
 
 [11]
 (c) Incidental and consequential damages.--In a proper case any incidental and consequential damages under section 2715 (relating to incidental and consequential damages of buyer) may also be recovered
 
 
 [12]
 We find worthy of brief discussion the requirement of the total cost method, focused upon by the bankruptcy court, that bid estimates be realistic. Although we do not hold that corroborating disinterested testimony substantiating the estimates is required, in this instance it would have served to bolster the credibility of Southeastern's estimates. Without corroboration of the testimony of Mr. Mills, the bankruptcy court's findings were necessarily predicated upon its appraisal of his credibility. This judgment as to the reliability and sufficiency of the evidence will not be disturbed by us unless the record proves this credibility finding to be clearly erroneous. We find no contrary evidence to indicate that the bankruptcy judge's finding was not grounded on a supportable factual basis, therefore, it is credited great weight and will not be disturbed by us on review
 
 
 [13]
 The appellant also earmarks the stipulation (n. 5, supra) as governing the financial outcome of this matter which they assert by its terms refutes the potential of an affirmative award in favor of the debtor
 As previously stated, we are disinclined to accord force and effect to the terms of the stipulation. Reiterating, its proclaimed purpose was to seek recovery in the South Carolina federal courts and the discontinuation of that action undercuts this argument.
 Also, Southeastern appears to argue that the stipulation represents an absolute admission of liability by Meyertech; however, Southeastern itself acknowledges that the document merely capped the extent of Meyertech's obligation in the event of failure to recover against the insurance carrier.
 
 
 [14]
 Meyertech's prayer for relief, characterizing the account receivable as a setoff pursuant to 11 U.S.C. Sec. 502(b)(3) 1984 (providing for setoff of claims under Sec. 553), necessitates a comment as to whether Meyertech is actually requesting a counterclaim, and if this is merely a semantic distinction
 Section 553 of the Bankruptcy Act, 11 U.S.C. Sec. 553(a) states:
 (a) Except as otherwise provided ... this title does not affect any right of any creditor to offset a mutual debt owing by such creditor to the debtor which arose before the commencement of the case under this title against the claim of such creditor against the debtor that arose from the commencement of the case....
 According to 4 Collier p 553.03, under the setoff principles recognized by this provision, the mutual debt and claim contemplated generally arise from different transactions.
 A counterclaim on the other hand is appropriate when the claim at issue arises out of a transaction or occurrence which is the subject matter of the opposing party's claim. Fed.R.Civ.P. 13. (Bankr.Rule 7013 provides that Rule 13 of the Federal Rules governs counterclaims arising in bankruptcy adversary proceedings.)
 Analyzing Sec. 553 of the Bankruptcy Act as a creditor's right provision and given the understanding that a setoff occurs when different transactions are involved, we conclude that the better classification of the account receivable claim is as a counterclaim and Meyertech's characterization of the amount as a setoff was a result of inartful phrasing.
 
 
 [15]
 Contrary rationale enunciated in In re Gus Holder, 91 F.Supp. 841 (D.C.N.J.1950), asserted by Southeastern as authority on this issue, is not persuasive as the Bankruptcy Code section, dictating that in the event of mutual credits and debits only the balance will be paid, is no longer in effect. Southeastern also refers to the instruction in 3 Collier on Bankruptcy p 502.01 at n. 21 stating that "if the trustee wishes to counterclaim and join it with an objection to claim, at least the counterclaim portions of the trustee's proceeding should be alleged in a formal complaint." (Emphasis added.) We highlight the word "should" and deem it as a permissive rather than a mandatory term, thereby construing it in conformity with the philosophy of permitting liberal amendment to the pleadings