**In re KAMINE/BESICORP ALLEGANY, L.P., Debtor.**

**KAMINE/BESICORP ALLEGANY, L.P., Plaintiff,**

v.

**ROCHESTER GAS & ELECTRIC CO., Defendant.**

**KAMINE/BESICORP ALLEGANY, L.P., Counterclaim–Plaintiff,**

v.

**ROCHESTER GAS & ELECTRIC CO., Counterclaim–Defendant.**

**Bankruptcy No. 95–28703 (WFT).**
**Adversary Nos. 95–2909 and 96–2559.**

United States Bankruptcy Court,
D. New Jersey.

March 19, 1997.

William Escobar, Kelley, Drye & Warren, Parsippany, NJ, for Debtor.

Alan B. Miller, Weil, Gotschal & Manges, New York City, for Secured Creditor General Electric Capital Corp.

Kenneth Rosen, Ravin, Sarasohn, Cook, Baumgartner, Fisch & Rosen, Roseland, NJ, for Creditors Committee.

William S. Thomas, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for Rochester Gas & Electric Co.

William Harvey, Klehr, Harrison, Harvey, Branzburg & Ellers, Cherry Hill, NJ, for General Electric Capital Corp.

Mark Baime, Dechert, Price & Rhodes, New York, NY, for Debtor.

Robert K. Malone, Shanley & Fisher, Morristown, NJ, for Rochester Gas & Electric Co.

Paul Hollander, Okin, Cohen, & Hollander, Fort Lee, NJ, for Equity Interest.

Edward M. Flint, Shaw, Licitra, Esnerio & Schwartz, Garden City, NY, for New York State Public Service Commission.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

### PROCEDURAL HISTORY

On November 13, 1995, Kamine/Besicorp Allegany, L.P. ("Kamine" or "Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code. At the time of the filing, the Debtor owned and operated an electricity generating facility located in Hume, New York. The Adversary Proceedings filed by the Debtor herein (Adv. Nos. 95–2909 and 96–2559) ultimately seek an adjudication of the rights and obligations of the parties under a Power Purchase Agreement ("PPA") entered into July 20, 1990.

This matter comes before the Court on remand of the District Court by Order entered August 5, 1996 which Order (1) reverses the December 28, 1995 Order of this Court insofar as it characterizes Claims III through V of the Adversary Proceeding (95–2909) the ("Original Adversary Proceeding") as "core" matters;[1] (2) reverses and remands for further proceedings consistent with the District Court's August 5th Opinion, the December 28, 1995 Order of this Court denying the Defendant, Rochester Gas & Electric Corporation's ("RG & E") Application for transfer of venue of the Original Adversary Proceeding to the Western District of New York; and (3) reverses and remands for further proceedings consistent with the District Court's August 5th Opinion, the December 28, 1995 Order of this Court denying RG & E's motion to mandatorily abstain from hearing claims III through V of the Original Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(2).

On August 15, 1996, Debtor filed a Motion in the New Jersey District Court pursuant to Federal Rule of Bankruptcy Procedure 8015, for rehearing and to supplement the record on appeal claiming that certain dispositive factual issues, not known to Kamine until after the District Court's Opinion, warranted the District's Court's reconsideration of its August 5th ruling. In particular, Kamine alleged that RG & E filed a Proof of Claim on May 28, 1996 and May 29, 1996 respectively (hereinafter collectively referred to as the "Proof of Claim") and that on August 13, 1996 Kamine in response to the Proof of Claim, filed an Objection and Counterclaims in an adversary proceeding entitled, *Kamine/Besicorp Allegany L.P., Counterclaim–Plaintiff v. Rochester Gas & Electric Corporation, Counterclaim–Defendant* (Adv. No. 96–2559) (the "New Adversary Proceeding") which Counterclaims mirror the claims asserted by the Debtor in the Original Adversary Proceeding.

---

1. The Court notes that Claims III through V of the Original Adversary Proceeding, which are the subject of Judge Bassler's Order on remand, are referenced as Claims IV through VI of the Amended Original Complaint. The Amended Original Complaint was filed on April 16, 1996, as discussed more fully at ¶ 10 herein.

In support of its Motion for Reconsideration, Kamine argued, in essence, that RG & E's filing of the Proof of Claim and Kamine's filing of Counterclaims in response thereto triggered a new "core" jurisdictional basis for Debtor's claims and therefore required the District Court's reconsideration of its August 5th ruling. Judge Bassler by Opinion and Order entered on September 9, 1996 denied Kamine's Motion For Reconsideration ultimately finding that it is *this* Court which can and should analyze the significance of the filing of the Proof of Claim and review the facts of the case and apply the appropriate law in accordance with the District Court's Opinion and Order of August 5th, 1996 and in light of the issues on remand. (Tr. of September 9, 1996 at pp. 8–10). Moreover, from a review of the transcript of the September 9, 1996 hearing, Judge Bassler specifically left to the discretion of this Court, the *Order* in which the above referenced issues are to be decided. (Tr. of September 9, 1996 at p. 23, 1. 18–19).[2]

Pursuant to this Court's directive at a Status Hearing on the remand issues held on September 17, 1996, on September 27, 1996, Debtor filed a Declaration in Support of Kamine and General Electric Capital Corporation's ("GECC") Arguments on the Issues Presented for Remand as well as a Memorandum of Law. Thereafter, on October 10, 1996, RG & E filed a Declaration, Reply Memorandum of Law In Support of its Application on Remand for Further Proceedings as well as two volumes of Supporting Exhibits.

Subsequent to the District Court's September 9, 1996 Opinion and Order denying reconsideration of its August 5th Opinion, on September 27, 1996 RG & E filed a Motion for Entry of an Order Dismissing or Staying Debtor's New Adversary Proceeding (Adv. No. 96–2559). The Debtor filed a Brief in Opposition to RG & E's Motion on October 10, 1996. A hearing was held by the Court on October 22, 1996 at which time the Court reserved decision. (Adv. No. 96–2559).[3]

The issues raised by Counts I and II of Debtor's Original Adversary Complaint (Adv. No. 95–2909) as well as the issues raised by RG & E's Motion for an Order Dismissing or Staying Debtor's New Adversary Proceeding (Adv. No. 96–2559) are "core" proceedings as defined by Congress in 28 U.S.C. § 157. With respect to Counts I and II of Debtor's Original Adversary Complaint, as well as its decision regarding RG & E's Motion to Dismiss or Stay the New Proceeding, the Court may if it so chooses, render findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The issues raised by Counts III through V of the Original Adversary Complaint herein have been held by the District Court in its August 5th Opinion to fall within this Court's "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and are "non-core." As such, pursuant to the District Court's Order of August 5, 1996, this Court is to determine on remand (a) whether to enforce the PPA's forum selection clause; and (b) whether it must mandatorily abstain from hearing claims III through V pursuant

**2.** A transcript of Judge Bassler's September 9, 1996 ruling is annexed to the Escobar Certification filed September 27, 1996 as Exh. D–2. At the hearing Judge Bassler stated: "There are now new events.... (Judge Tuohey) can take into consideration in evaluating the new events and evaluating the old events in light of the new events ... He can open up the first order in view of subsequent events. He's free to do a lot of things." (Tr. 10–11).

**3.** At the October 22, 1996 hearing, the Court further heard several other matters and in addition to reserving decision on RG & E's Motion to Dismiss or Stay the New Adversary Proceeding (No. 96–2559), the Court also reserved on the following 2 motions:

(1) RG & E's Motion to Lift the Stay to Permit Filing of a Petition with the Federal Energy Regulatory Commission ("FERC") to Decertify the Debtor's Facility, filed August 28, 1996. A Memorandum in Opposition to the Motion For Relief from the Stay was filed by the Debtor on October 15, 1996. (Case No. 95–28703).

(2) New York Department of Public Service's Motion for Rehearing, Reargument and/or Reconsideration of the Public Service's Motion for a Declaration of Exemption from the Stay or in the Alternative for Referral to the New York State Public Service Commission, filed on August 19, 1996. On October 16, 1996 RG & E filed a Statement in Support of the Public Service's Motion for a Rehearing. (Case No. 95–28703).

The Court shall issue a separate Opinion and Order with respect to the above-reserved decision.

to 28 U.S.C. § 1334(c)(2). This latter determination requires the Court to make a finding as to whether or not a pending state court action could be "timely adjudicated" within the meaning of 28 U.S.C. § 1334(c)(2).

At the outset this Court notes that since a determination in favor of the debtor with respect to the jurisdictional effect of the filing of the Proof of Claim and the New Adversary Proceeding pursuant to 28 U.S.C. § 157(B)(2)(B) and (C) may render moot many of the issues presented on remand of the Original Adversary Proceeding, the Court finds it most expedient to treat the issue concerning the effect of the filing of the May 28, 1996 Proof of Claim and the New Adversary Proceeding first. It will then treat the remand issues accordingly.

## FACTUAL BACKGROUND

The Court adopts the Factual Background of this matter as set forth in the District Court's August 5, 1996 Opinion as the law of the case. The Court further recognizes that the parties do not dispute the detailed statutory framework set forth by the March 18, 1995 Decision of United States District Judge David G. Larimer of the Western District of New York in the Federal Antitrust Action entitled *Kamine/Besicorp Allegany L.P. v. Rochester Gas & Electric Corp.* (95–CV–6045L) the (WDNY Action) and incorporates those findings by reference herein.[4] This Court makes the following *additional* findings of-fact relevant to the effect of the filing of the Proof of Claim, the New Adversary Proceeding and the issues before it on remand.

### The Parties

1. As has been heretofore referenced, on November 13, 1995, the debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtor is a Delaware limited partnership whose single purpose is to develop, construct, own and operate a facility located in Hume, New York. The Chapter 11 petition filed by the Debtor indicates that its place of business is at Route 22 East, Union, New Jersey. (Malone Declaration filed September 27, 1996, ¶ 1).

2. The Debtor's major asset is an electricity generating facility located in Hume, New York. (Malone Declaration, ¶ 2).

3. Defendant, RG & E is a New York State public service corporation with its principal place of business in Rochester, New York. (Malone Declaration, ¶ 6).

4. RG & E's exclusive service area covers nine counties in New York State centering around Rochester and includes Allegany County, the location of Debtor's New York facility. According to the Declaration of its counsel, based upon its annual report, RG & E had 338,509 ratepaying customers within its exclusive New York area as of December 31, 1994. (Malone Declaration, ¶ 7).

5. General Electric Capital Corporation ("GECC"), intervenor in this matter, is a secured creditor of the Debtor having advanced $90,000,000.00 to the Debtor to build the electric plant. In addition, GECC has, as of September 1996, extended approximately $13,000,000 in accordance with the DIP financing approved by the Court. GECC continues to extend $1,000,000 per month in additional post petition financing to enable the debtor to maintain its plant. (Declaration of William Escobar, filed September 27, 1996, ¶ 37).

### The Power Purchase Agreement

6. By Order dated March 12, 1990 of the New York State Public Service Commission ("NYSPSC"), RG & E was compelled to enter into a Power Purchase Agreement ("PPA") with Debtor's predecessor in interest, Allegany Cogeneration, Inc. The PPA was entered into on July 20, 1990. Allegany subsequently assigned its interests under the PPA to Debtor by an Assignment and Assumption Agreement, dated August 25, 1992. (Malone Declaration, ¶ 8).

7. Pursuant to the terms of the PPA, Forum Selection Clause, the Agreement is to be governed by and construed by New York

---

4. In the WDNY Action, plaintiff, Kamine commenced an action for damages and injunctive relief against defendant RG & E, asserting causes of action under Section 2 of the Sherman Act, 15 U.S.C. § 2, and § 4 and 16 of the Clayton Act, 15 U.S.C. § 15, 26.

Law. Article XXI(b) of the PPA, The Forum Selection Clause, specifically provides:

Applicable Law

This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Buyer and Seller irrevocably consent that any legal action or proceeding arising under or relating to this Agreement shall be brought in any court of the State of New York or any federal court of the United States of America located in the State of New York. Without prejudice and subject to the jurisdiction of the commission, each of the parties irrevocably waives any objection which it now has or may have in the future to the State of New York as the proper forum for any action arising under or relating to this Agreement. (Exhibits to Reply Declaration of David M. Schraver in Further Support of Defendant RG & E's Position on Remand, Exhibit B—PPA).

### The New York State Action

8. On March 14, 1994, RG & E sent a letter to the Debtor terminating the PPA for alleged "cause." The Debtor then petitioned the NYSPSC seeking an order prohibiting RG & E from terminating the PPA. (Malone Declaration, ¶ 10).

9. RG & E then filed a petition seeking the NYSPSC's approval to terminate the PPA based upon Debtor's alleged breach of representations concerning the plant's size and for an alleged failure to meet a construction milestone date for a "nominally 55 MW" plant. (Malone Declaration, ¶ 10). The NYSPSC treated RG & E's petition as a Counter-complaint. Thereafter, on September 15, 1994 the NYSPSC denied the Debtor's petition and RG & E's Counter-complaint, finding the issues to be matters of contract interpretation for the New York courts to resolve. (Malone Declaration, ¶ 10).

10. In September 1994, RG & E commenced an action in the New York State Court for Monroe County, entitled *Rochester Gas and Electric Corporation, vs. Kamine/Besicorp Allegany L.P., Allegany Cogeneration Inc., Kamine Allegany Cogen Co. Inc., Beta Allegany, Inc., and Kamine Devel-*

*opment Corp.,* (Case No. 8174–94) (the NYS Action). The Complaint alleges commercial impracticability/impossibility, mutual mistake, frustration of purpose, and anticipatory breach/prospective inability to perform. The action sought a declaration of the rights and obligations of the parties to the PPA, its rescission or, in the alternative, an Order directing the debtor to provide adequate assurances that it would perform the PPA. (Malone Declaration, ¶ 11).

11. In November 1994, RG & E filed an Amended Complaint adding causes of action for breach of contract based upon Debtor's alleged misrepresentation of the plant's generating capacity and for reformation of the contract to conform it to the parties stated intent that "the cost to RG & E of Electricity purchased by it hereunder from the date the Plant commences commercial operation and thereafter over the term of this Agreement be equal to or below RG & E's Avoided Cost." (Malone Declaration, ¶ 12 citing the "Schraver Declaration in Support of Venue/Abstention Motion).

12. On January 3, 1995, Debtor filed its Amended Answer to the Amended Complaint asserting counterclaims for specific performance of the PPA, a permanent injunction, a declaratory judgment that RG & E is bound by the terms of the PPA, for breach of contract and breach of the implied covenant of good faith and fair dealing, claims, which the Court notes, are substantially similar to the ones asserted by the Debtor in the within Original Adversary Proceeding.

13. On December 21, 1994, Debtor claims to have placed the New York facility in commercial operation. RG & E alleges that the debtor did not have an operating "thermal host" on site on the date of commercial operation. Presently, the NYSPSC's investigation into whether or not the debtor satisfies the definition of "cogeneration facility" under New York Law is stayed pursuant to § 362 of the Bankruptcy Code by the filing of the debtor's petition. The Motion made by NYSPSC for stay relief is presently pending before this Court.

14. On March 16, 1995, the New York Supreme Court, finding that significant fac-

tual issues existed concerning the allegations in RG & E's Complaint, denied Debtor's Motion for summary judgment in the NYS Action.

15. The Debtor appealed from the New York Court's denial of summary judgment on the ground that federal law preempted RG & E's state law claims. The Appeal was argued on October 17, 1995, however a decision on the appeal was stayed by the debtor's bankruptcy filing.

### The Western District of New York Action

16. On January 27, 1995, approximately one week after filing for summary judgment in the NYS Action, Debtor commenced an antitrust action in the Western District of New York, heretofore referenced as the WDNY Action. In that action, Judge Larimer issued a TRO requiring RG & E to pay six cents per Kwh to the Debtor for the period March 20, 1995 through October 1995. The Court notes particularly the language of Judge Larimer in his written Opinion of March 18, 1995 that the underlying question concerning the rate that will be applied under the PPA is "essentially a matter of contract interpretation, which is the subject of the action now in state court. That is the appropriate forum to resolve these rate disputes." (March 18, 1995 Opinion of Judge Larimer, at p. 30).

17. After what RG & E describes as "extensive discovery", the District Court ultimately modified its initial TRO denying the debtor's motion for a preliminary injunction in all respects except to the extent that defendant, RG & E, had agreed to purchase power from the debtor *pendente lite*, at the current tariff rate (SC5 rate).

### Procedural History of Original Adversary Proceeding

18. On November 13, 1995, the same day that Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code, the debtor also initiated the Original Adversary Proceeding against RG & E (Adv. No. 95–2909). The Complaint asserted the following five claims for relief:

(Count I) Enforcement of the Automatic Stay pursuant to Bankruptcy Code § 362;
(Count II) Enforcement of Executory Contract pursuant to Bankruptcy Code § 365 concerning the 25 year fixed price Power Purchase Agreement (the "PPA");
(Count III) Specific Performance of the PPA;
(Count IV) Breach of Contract; and
(Count V) Breach of the Implied Covenant of Good Faith and Fair Dealing. (Declaration of William Escobar, filed September 27, 1996, ¶ 2).

19. On November 13, 1995, Debtor also filed a motion seeking temporary injunctive relief requiring RG & E to perform its obligations under the PPA pending adjudication of the claims set forth in the Original Adversary Proceeding.

20. On November 20, 1995, the Debtor filed a Motion to Assume the PPA as an executory contract, pursuant to section 365 of the Bankruptcy Code. With the consent of the parties, this Court then placed the Motion to Assume and the Original Adversary Proceeding on a simultaneous scheduling track.

21. On November 21, 1995, this Court conducted an evidentiary hearing on Debtor's Application for Injunctive Relief specifically seeking an Order Enjoining RG & E from Unilaterally Modifying or Terminating the PPA and for the Entry of an Order to Show Cause. At that time, this Court issued a bench opinion finding that the Original Adversary Proceeding was a core proceeding. The Court denied Debtor's requests for restraints but ordered an expedited trial placing the Original Adversary Proceeding on a "fast track."

22. Also on November 21, 1995, RG & E filed an Application for Change of Venue of the Case or for Change of Venue of the Original Adversary Proceeding or for Limited Relief from Stay to Prosecute the pending State Court Action.

23. On December 7, 1995, finding that the issues raised in the Original Adversary Proceeding were core matters, this Court issued a second bench opinion denying RG & E's Application for an Order (a) transferring venue of either the Bankruptcy Case or the Original Adversary Proceeding to the Western District of New York or, alternatively; (b) abstaining from hearing claims III through V of Original Adversary Proceeding

under either mandatory or discretionary abstention pursuant to 28 U.S.C. § 1334(c)(2) and 1334(c)(1); or alternatively, (c) an Order Lifting the Automatic Stay to Permit Adjudication of Claims III through V of the Original Adversary Proceeding in New York State Court. An Order was entered on December 28, 1995 in accordance with the Court's December 7, 1995 Bench Decision.

24. Significantly for purposes of the within Opinion, while this Court's December 7, 1995 ruling finding core jurisdiction was the law of the case, on December 13, 1995, RG & E filed an Answer to the Original Adversary Complaint and Asserted Counterclaims.[5] These Counterclaims tracked RG & E's pre-bankruptcy state court complaint. The Answer denied that this Court had jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. § 1334(b), denied that venue lay in this Court as provided by 28 U.S.C. § 1409(a) and denied that the Adversary Proceeding was a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Answer also expressly withheld consent to entry of final orders or judgments of this Court and expressly averred that by the Adversary Proceeding the Debtor sought "adjudication of a pre-petition contract dispute, expressly governed by the laws of the State of New York, that is the subject of a pre-petition lawsuit pending in New York Supreme Court for the County of Monroe; Index No. 8174–94."

25. Additionally, as pointed out to the Court by Counsel for RG & E, the Answer's First Affirmative Defense also expressed its objection to this Court's jurisdiction over Claims III through V of the Original Adversary Complaint as follows:

A. The Bankruptcy Court lacks subject matter jurisdiction over plaintiff's state law claims set forth in the Third through Fifth claims for Relief in the Complaint, for the reasons set forth in the Application of Rochester Gas and Electric Corporation for the Entry of An Order Transferring the Venue of the Adversary Proceeding, or, Alternatively Abstaining From Hearing Adversary Proceeding And Granting Limited Stay Relief To Prosecute State Court Action, dated November 20, 1996, and supporting papers, declarations and exhibits previously on file in this case, including a Reply filed December 7, 1995, which are incorporated by reference herein.

B. Venue of Debtor's case is not proper under 28 U.S.C. § 1408(1), therefore the venue of this adversary proceeding is not proper.

C. The PPA contains a choice of forum clause mandating a New York forum, therefore the venue of this adversary proceeding is not proper.

D. The claims set forth in the Third through the Fifth Claims for Relief sound solely in state law, are based on facts existing pre-petition as counterclaims in a pending state court action. The claims are non-core. The gravamen of each claim is rooted in state law and the pre-bankruptcy past. There is no federal jurisdiction of such claims absent this bankruptcy.

E. This Court must abstain from hearing the Third through the Fifth Claims for Relief under 28 U.S.C. § 1334(c)(2).

F. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, RG & E does not consent to jurisdiction and at this time has not filed a proof of claim in this proceeding.

G. Under 28 U.S.C. §§ 157 and 1334 and under Article III of the United States

---

5. The Counterclaims asserted are as follows: First Counterclaim—(Performance of the PPA is Commercially Impracticable/Impossible); Second Counterclaim—(PPA was executed under Mutual Mistake); Third Counterclaim—(Purpose of PPA is Frustrated); Fourth Counterclaim—(Debtor anticipatorily breached the PPA/Prospective Inability to Perform); Fifth Counterclaim (Failure to disclose critical information relating to inability to perform PPA); Sixth Counterclaim (breach of PPA); Seventh Counterclaim (Debtor made misrepresentations regarding the PPA); Eighth Counterclaim—(Breach of PPA); Ninth Counterclaim (Reformation of the PPA); and Tenth Counterclaim—(Recoupment of the overpayments to Debtor while the TRO in the WDNY Action was in place amounting to approximately $7 million). According to the Declaration of Robert K. Malone, filed September 27, 1996, at footnote 1, by inadvertence the Answer denominated two counterclaims as Fifth and two counterclaims as Eighth. The counterclaims have been referred to above sequentially as First through Tenth.

Constitution, this Court lacks subject matter jurisdiction to enter judgment on the state-created private rights under the PPA as requested in the Third through the Fifth Claims for Relief.

(Application of RG & E in Support of its Motion for Entry of an Order Dismissing or Staying Debtor's Duplicative Adversary Proceeding, filed September 27, 1996, ¶ 8).

26. On January 5, 1996 RG & E filed a Notice of Appeal with the United States District Court for the District of New Jersey preserving its right to appeal this Court's December 28, 1995 Order denying RG & E's Application.

27. On April 1, 1996 the Debtor filed a Plan of Reorganization and Disclosure Statement. The Court noted at the December 7, 1995 hearing and notes again here that the ability of the Debtor to consummate its Plan of Reorganization is expressly contingent upon Debtor's success on its suit concerning the PPA. As the Court stated at the December 7, 1996 hearing, "Ultimately if the debtor is to reorganize, the linchpin of that reorganization will be the debtor's rights under the Power Purchase Agreement." (Tr. of December 7, 1996 at 81).[6]

28. On April 16, 1996, the Debtor filed an Amended Complaint in the Original Adversary Proceeding, which, *inter alia,* added a count for turnover of $9,587,056.71 pursuant to 11 U.S.C. § 542(2) and a Count for Permanent Injunction (Count VII). According to the Declaration of Debtor's Counsel, the turnover claim is now designated as "Count III" of the Amended Complaint. As a result of the new Count in the Amended Complaint, Counts III through V of the Original Adversary Complaint, which were the subject of Judge Bassler's August 5th Remand Order, are now designated as Counts IV through VI of the Amended Complaint. The issue raised by Count III of the Amended Complaint is a "core" proceeding as defined by Congress in 28 U.S.C. § 157. With respect to Count VII of the Amended Complaint, this Court finds the remedy of permanent injunction sought is essentially the same as specific performance and is therefore "non-core."

29. On May 1, 1996, RG & E filed its Amended Answer and Counterclaims to the Original Amended Complaint. The Court notes that as alleged by RGE, its Amended Answer contains the same denials, affirmative defenses and objections to this Court's jurisdiction over the Original Adversary Proceeding and to venue in the District of New Jersey as were contained in RG & E's original Answer. Also, the Amended Answer interposed the same ten compulsory counterclaims contained in RG & E's original Answer, and which were asserted by RG & E pre-bankruptcy in its state court complaint.

### Proofs of Claim Filed by RG & E

30. On or about January 26, 1996, RG & E filed a Proof of Claim for unpaid utility services in the amount of $288.57, which is listed in the Court's Claim's Register as Claim No. 2.[7] RGE asserts and the Court accepts the assertion that RGE's Counsel and RGE's senior management were not aware that the $288.57 Proof of Claim had been filed. In any event, the claim is unrelated to the PPA or to either the Original or the New Adversary Proceeding.

31. On April 1, 1996, Debtor filed a Notice of Motion pursuant to Bankruptcy Rule 3003(c)(3) to Fix a Bar Date for Filing Proofs of Claim and Establish Notice Procedures. The hearing on the Bar Date Motion was scheduled for April 22, 1996.

32. On April 23, 1996, an Order was entered pursuant to Bankruptcy Rule 3003(c)(3) granting the Debtor's Motion to Fix a Bar Date for Filing Proofs of Claim and setting the bar date as May 31, 1996.

33. On April 25, 1996, Debtor's counsel indicates that he served a copy of the Bar

---

6. The Court went on to recognize at the December 7th hearing: "The Power Purchase Agreement from 1990 that is before the Court is the be all and end all of the debtor's reorganization efforts. The debtor was created for the sole purpose of entering into a power purchase agreement." (Tr. 79).

7. A review of this claim reveals the figure represents the "cost of electricity used" for the billing period 10/27/95 to 11/13/95 including a balance being carried over from the previous month's bill.

Date Order to all creditors and parties in interest in this case.

34. With the bar date of May 31, 1996 having been established, the Court's Claims Register reflects that on May 28, 1996 and May 29, 1996 RG & E filed Proofs of Claim, numbers 14 and 27 respectively, each in the amount of $8 million dollars. The Court notes that Claim number 27 is simply an amended version of claim number 14 and refers to the change in counts of the Adversary Proceeding due to the filing of the Debtor's Amended Complaint. At the September 16, 1996 hearing, the Court marked Proofs of Claim numbers 14 and 27 (referred to herein collectively as the "Proof of Claim") as Exhs. R–1 and R–2, respectively.

35. Significantly, for purposes of the Court's ruling on the effect of the filing of the Proof of Claim with respect to the issues before it on remand, RG & E submitted the Proof of Claim based upon its Tenth Counterclaim seeking recoupment of alleged overpayments made to the Debtor during the pendency of the TRO issued in the WDNY Action. (RG & E's Application in Support of its Motion for the Entry of an Order Dismissing or Staying Debtor's Duplicative Adversary Proceeding, filed September · 27, 1996, ¶ 20). The Proof of Claim contains the following qualifying language:

### Claim Submitted Subject to RG & E's Subject Matter Jurisdiction Objections

This Proof of Claim is submitted subject to the objections of Rochester Gas and Electric ("RG & E") to the Bankruptcy Court's subject matter jurisdiction over Debtor's state law claims set forth in the Third through Fifth claims for Relief in the Debtor's Adversary Proceeding No. 95–2909, as contained in (1) RG & E's Answer; (2) the Application of Rochester Gas and Electric Corporation For Entry of An Order Transferring Venue of Adversary Proceeding, or, Alternatively Abstaining from Hearing Adversary Proceeding and Granting Limited Stay Relief To Prosecute State Court Action, dated November 20, 1995; (3) RG & E's Brief in Support of its Appeal to the U.S. District Court for the District of New Jersey from an Order dated De-

cember 28, 1995; and (4) the supporting papers, declarations and exhibits previously on file in this case, including a Reply filed December 7, 1995, all of which are incorporated by reference herein. (Escobar Certification, Exhs. R–1 and R–2)

36. As set forth in the Proof of Claim, RG & E is asserting that it is entitled to recoupment of the difference between its SC–5 tariff rate and its payment of $.06 per Kwh—price terms derived from the PPA—for electricity delivered by the debtor during the period March 20 through November 2, 1995 when the March 20, 1995 temporary restraining order ("TRO") entered by the United States District Court for the Western District of New York was in effect. (Escobar Certification, ¶ 21). The Proof of Claim provides:

### Basis and Amount of RG & E's Recoupment Claim

RG & E paid six cents per Kwh to Debtor pursuant to a Temporary Restraining Order ("TRO") issued by the United States District Court for the Western District of New York, on March 20, 1995 and in effect through October 1995. RG & E's total payments to Debtor during this period amount to approximately $13.6 million. The payments to Debtor while the TRO was in place exceeded RG & E's avoided cost by approximately $8 million. RG & E is entitled to recoup this approximately $8 million in overpayments, and other overpayments. (Escobar Certification, Exhs. R–1 and R–2).

37. In support of its argument for a new core jurisdictional footing by the filing of the Proof of Claim, the Debtor contends in its submission on remand, that the allegations set forth in the RG & E Proof of Claim "relate directly to" *inter alia*, the existence and validity of the PPA, whether the Debtor commenced "commercial operations" as that term is defined in the PPA, and what rates RG & E was required to pay the debtor under the PPA. (Escobar Certification, ¶ 26). In sum, the Debtor alleges that, the issues raised by the RG & E Proof of Claim, parallel the facts and claims alleged by Debtor

and GECC in their Amended Complaint in the Original Adversary Proceeding.

### The Debtor's Initiation of the New Adversary Proceeding

38. On August 13, 1996, Debtor filed a second adversary complaint (Adv. No. 96–2559) setting forth its Objections Joined With Counterclaims to RG & E's Proof of Claim pursuant to Bankruptcy Rules 3007 and 7001 (the New Adversary Proceeding). In its Objection, the Debtor seeks to expunge RG & E's $8 million Proof of Claim in its entirety and asserts Counterclaims for damages and specific performance under the PPA. At the September 16, 1996 hearing, the Court marked the Debtor's New Adversary Proceeding as Exh. D–1.

39. A summons and notice of pretrial conference was issued by the Clerk of the Bankruptcy Court on August 27, 1996. As indicated herein, on September 27, 1996, RG & E filed its motion to Dismiss or Stay the Debtor's New Adversary Proceeding. On October 22, 1996, this Court reserved its decision on RG & E's Motion to dismiss and incorporates its resolution of this matter herein.

40. Upon review, the Court's comparison of Debtor's Counterclaims A through D of the New Adversary Proceeding and Claims IV through VII of the Amended Original Complaint reveals that they are in fact identical. That is, as is demonstrated by the chart submitted by Debtor's Counsel at page 10 of his Certification, Claim IV (Specific Performance), Claim V (Breach of Contract), VI (Breach of Covenant of Good Faith), and Claim VII (Permanent Injunction) of the Original Amended Adversary Complaint mirror precisely. Counterclaim A (Specific Performance) Counterclaim B (Breach of Contract), Counterclaim C (Breach of Covenant of Good Faith and Fair Dealing), and Counterclaim D (Permanent Injunction) of the New Adversary Proceeding. (Escobar Certification, ¶ 29—Chart).

41. The Debtor argues that its Counterclaims "mirror claims IV through VII of the Amended Original Adversary Complaint because RG & E's Proof of Claim raises the very issues that are asserted in the Original Adversary Proceeding. . . ." (Escobar Certification, ¶ 30). The Debtor contends that

"core" matters arise in the context of the debtor's Counterclaims directly involving the terms and conditions of the PPA and RG & E's conduct in refusing to perform. (Escobar Certification, ¶ 31). In addition, in further urging this Court to find core jurisdiction over the newly asserted Counterclaims, the debtor stresses the fact that until all of the issues in dispute between RG & E and the Debtor are resolved, the Debtor will be unable to assume the PPA and conclude its reorganization efforts. (Escobar Certification, ¶ 31).

### Factors Concerning Timely Adjudication

42. The Debtor urges that it is ready to proceed to trial in the near future on Counts I through III of the Amended Original Complaint, as well as on the Debtor's Motion to Assume the PPA, and the Debtor's Objections Joined with Counterclaims to RG & E's Proof of Claim, all of which it contends involve facts and issues identical to those raised in Counts IV through VII of the Amended Complaint in the Original Adversary Proceeding. In urging this Court to find against mandatory abstention of the non-core claims of the Amended Original Complaint pursuant to 28 U.S.C. § 1334(c)(2), and assert core jurisdiction over the mirror image of those claims now asserted in the context of the New Adversary Proceeding, the Debtor cites the following factors regarding timeliness of adjudication of claims here and in the New York State Court:

(a) The "expedited" trial schedule which this Court has previously established;

(b) The fact that the New York State Action instituted against the Debtor and four other defendants in the Supreme Court of New York for Monroe County on September 6, 1994 has been inactive since March 1995 and the case has been reassigned to a new judge;

(c) The fact that under the procedural rules of New York, RG & E can delay a trial for months if not years by adding other claims or parties or moving for summary judgment. Should RG & E lose on any of the above motions, it has the right to appeal;

(d) Significant DIP financing arrangements with GECC whereby the Debtor was indebted to GECC in the amount of $13,000,000 as of September 1996. GECC continues to extend $1 million per month in additional post petition financing to enable the Debtor to maintain its plant;

(e) The need for a quick resolution so that the debtor can maintain existing contracts for the delivery of natural gas to fuel the debtor's plant;

(f) Notwithstanding the fact that RG & E may seek to add claims or file a motion for summary judgment, the Debtor asserts that the matter would not be ready for trial until a note of issue and certificate of readiness is filed. The Debtor advises that neither of these can be filed until all pre-trial proceedings including all discovery has been completed. If the Debtor files a note of issue and certificate of readiness in the state court action, RG & E has the right to move to vacate it within 20 days. (citing N.Y. Uniform Rules for the Supreme Court §§ 202.21 *et seq.;* N.Y. Civ. Prac.L. & R.3402). (Escobar Certification, ¶ s 35–39).

43. Conversely, in arguing in favor of a "timely adjudication" by a New York forum, RG & E points out that given the increased time involved for a *de novo* adjudication of any decision by this Court on the Adversary Proceeding's third through fifth claims, "any disparity between the time required for adjudication in New York and in this court is minimal." (Response and Memorandum of Law of RG & E in Support of its Application on Remand for Further Proceedings, filed August 15, 1996, at p. 12). RG & E requests that this Court transfer venue of this matter to the Western District of New York. Alternatively, RG & E requests that this Court mandatorily abstain from hearing claims III through V pursuant to 28 U.S.C. § 1334(c)(2).

In addition, RG & E points out to the Court that as Judge Bassler noted in his August 5th Opinion, the discovery which has taken place in the Adversary Proceeding thus far can transfer to either of the pending New York proceedings.

Moreover, the Court notes that RG & E, in recognition of what it contends are the economics of judicial administration, previously offered to stipulate to transfer the Adversary Proceeding's third through fifth claims and the NYS Action to Judge Larimer of the Western District of New York.

### DISCUSSION

On remand, the central issues the Court must address in this matter concern the enforceability of the PPA's forum selection clause and mandatory abstention over non-core claims pursuant to 28 U.S.C. § 1334(c)(2). With the post remand discovery of the filing of the May 28, 1996 Proof of Claim however, and in light of the District Court's ruling of September 9, 1996, leaving a determination regarding the effect of the filing thereof to this Court to determine, this Court is required to engage in an *additional* threshold analysis concerning the jurisdiction of this Court over the same set of operative facts and claims which had given rise to the Original Adversary Proceeding and which have been held to be non-core by the District Court, to now arise in a different *procedural context,* that is, the filing of the Proof of Claim and New Adversary Complaint.

Given the above, the issues remanded by the District Court Opinions and Orders of August 5, 1996 and September 9, 1996 reviewed collectively are: (1) what effect, if any, does the filing of the Proof of Claim by RG & E on May 28, 1996, and the Debtor's subsequent filing of it's Objections and Counterclaims with respect thereto on August 13, 1996 (Adv. No. 96–2559) (the New Adversary Proceeding) have on the jurisdiction of the Bankruptcy Court to determine the issues on remand; (2) assuming the Court finds that the filing of the Proof of Claim in this case does not create a new jurisdictional foothold over the noncore issues raised, and hence does not negate or change any of the issues on remand, in light of the District Court's August 5th finding that Claims III through V of the Original Adversary Proceeding fall within this Court's "related to" jurisdiction and are non-core, should this Court (a) en-

force the PPA's forum selection clause, and/or (b) mandatorily abstain from hearing those non-core claims pursuant to 28 U.S.C. § 1334(c)(2) upon a finding by this Court that the claims can be "timely adjudicated" in the pending State Court Action in New York; and (3) Finally, in light of the Court's resolution of the first issue above regarding the effect of the filing of the Proof of Claim and the Debtor's Objections and Counterclaims thereto (Adv. No. 96–2559) (the New Adversary Proceeding), the Court must render its decision on RG & E's Motion to Dismiss or in the Alternative, Stay the New Adversary Proceeding.[8]

Alternatively, should this Court find that the filing of the Proof of Claim and the New Adversary Proceeding does in fact create new core jurisdictional footing over the issues raised in the New Adversary Complaint, the Court may then treat those issues in the context of the New Adversary Complaint, and in so doing, moot many of the considerations on remand in the Original Adversary Proceeding.

Upon a thorough examination of 28 U.S.C. § 157(b)(2)(B) and (C) and the case law cited by the parties and independently researched by the Court in this matter, we hold first that the May 28, 1996 filing of the Proof of Claim and the Objection and Counterclaims with respect thereto (the New Adversary Proceeding), did *not*, under the facts and procedural history of this particular case, create a new core jurisdiction for this Court to review the state law, non-core claims of either the Original or New Adversary Proceedings. In so holding, this Court specifically finds that to conclude otherwise would run counter to the jurisdictional parameters of the bankruptcy court first established by the Supreme Court in the seminal case of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*"). This Court must then consider the issues on remand.

Second, with respect to the issues on remand, in light of the District Court's ruling that Claims III through V (now IV through VI) of the Original Adversary Complaint fall within this Court's "related to" jurisdiction and are non-core, this Court finds that under the factors cited by the Third Circuit in the controlling case of *In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir.1987), following the standard set forth by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the contractual forum selection clause must be enforced.

Third, this Court addresses the mandatory abstention issue pursuant to 28 U.S.C. § 1334(c)(2) in accordance with the directive of the District Court Remand Order of August 5th and holds that for the reasons cited herein, Claims III through V of the Original Adversary Proceeding may be "timely adjudicated" within the meaning of 28 U.S.C. § 1334(c)(2) by the New York State Court in the pending NYS Action. Therefore, this Court grants RG & E's request for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2).

Finally, in an effort to avoid duplicative litigation in separate forums and to promote the most efficient and expedient judicial administration of this case, in light of this Court's decision regarding enforceability of the forum selection clause and mandatory abstention to Claims III through V of the Original Adversary Proceeding, this Court simultaneously herewith grants RG & E's motion to stay the New Adversary Proceeding pending the outcome of the Original Adversary Complaint.

In the alternative, this Court further specifically holds that were Debtor and GECC to *prevail* on their argument concerning the jurisdictional effect of the filing of the Proof of Claim, as creating new core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) and (C),

---

**8.** In deciding the Motion by RG & E to Dismiss or Stay the New Adversary Proceeding, the Court accepts the position put forth by counsel for the debtor that Judge Bassler did not rule that a Rule 60(b) motion was a mandatory prerequisite to this Court's consideration of the New Adversary Proceeding in connection with the remand is-

sues. As pointed out to the Court by Debtor's counsel, the issues regarding the New Adversary Proceeding have been fully briefed by the parties and decision reserved thereon at the October 22, 1997 hearing. Therefore, the Court issues its decision regarding RG & E's Motion as part of the within Opinion.

so that the New Adversary Proceeding (Counterclaims A through D) are properly before this Court for final adjudication, given the procedural history of this case and the fact that these identical claim were raised *prior to* the May 28, 1996 filing of the Proof of Claim in the Original Adversary Proceeding, this Court would nevertheless stay the New Adversary Proceeding pending adjudication of the Original Adversary Proceeding by the New York State Court.

## I.  ANALYSIS

### a.  The Effect of the Filing of the Proof of Claim and the New Adversary Proceeding.

Debtor asserts that by filing its two Proofs of Claim on May 28 and 29, 1996 respectively, seeking to recover $8 million of alleged overpayments to Kamine under the Power Purchase Agreement, RG & E irrevocably and indisputably altered the procedural status of the litigation between the Debtor and RG & E pending in this Court. In essence, Debtor asserts that although the District Court previously determined that Counts III through V of the Adversary Proceeding were non-core, that determination has been overtaken by the filing of the RG & E Proof of Claim, the New Adversary Proceeding which claims mirror those asserted in the original Adversary Proceeding, and the jurisdictional consequences of those filings. The Debtor asserts that the New Adversary Proceeding, triggered by the filing of the RG & E Proof of Claim is indisputably a core proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(B) and (C). The Debtor cites what it contends are controlling Supreme Court precedents, including, *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), and *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) for the proposition that the filing of a proof of claim, coupled with the commencement of an adversary proceeding by the assertion of related counterclaims, confers a bankruptcy court with core jurisdiction. The debtor argues that the "transformation" of the claims asserted in the Original Adversary Proceeding and subsequently in the Counterclaim from non-core to core matters is not by "sleight of hand," as asserted by RG & E, but rather by operation of law as a direct consequence of the filing of the RG & E Proof of Claim.

Finally, in response to RG & E's contention that the Proof of Claim was filed subject to the jurisdictional objection of RG & E, the debtor contends that under the Third Circuit Case of *Travellers International AG. v. Robinson*, 982 F.2d 96 (3d Cir.1992), *cert. denied*, 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993), the "protective" or "defensive" filing of a proof of claim does not shield a creditor from having consented to the bankruptcy court's exclusive jurisdiction. It argues that, where, as in this case, a creditor has filed a claim, even though the claim is couched in protective language, that creditor has submitted to the bankruptcy court's equitable jurisdiction. 982 F.2d at 100.[9]

In opposing Debtor's argument in favor of core jurisdiction by virtue of the filing of the Proof of Claim, RG & E, for its part, contends first that under the alleged controlling Third Circuit authority of *Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990) and the Ninth Circuit decision in *Castlerock Properties*, 781 F.2d 159 (9th Cir.1986) cited favorably therein, and the Bankruptcy Court decision in *In re Sporting Club at Illinois Center*, 132 B.R. 792, 800 (Bankr.N.D.Ga. 1991), RG & E's filing of its Proof of Claim did not confer "core" jurisdiction over the debtor's state law contract claims which deal with the enforcement of a pre-petition contract. RG & E cites the fact that these identical claims were the subject of two civil

---

**9.** Parenthetically, Kamine and GECC also question whether RG & E needed to file a proof of claim since the RG & E Proof of Claim is for *recoupment*, an equitable right that, the debtor contends, RG & E could have asserted up through confirmation of Kamine's plan of reorganization or used defensively in this litigation but not for purposes of obtaining an affirmative recovery, irrespective of the bar date. In so doing, the debtor argues RG & E could have avoided "jurisdiction by ambush." (Memorandum of Law of Debtor and GECC, filed October 10, 1996, at p. 30).

actions pending in the New York State and Federal Court and have been held to be "related to" this case by the New Jersey District Court. RG & E argues that Debtor's efforts to play "fast and easy" with the Bankruptcy Code by filing the Second Adversary Proceeding after learning of the Remand order does not alter the nature of the third through fifth claims and cannot transform those claims "magically" into counterclaims within the scope of 28 U.S.C. § 157(b)(2)(C). RG & E then contends that RG & E's Proof of Claim like its Answers filed with compulsory counterclaims, all filed by RG & E following this Court's finding of "core" jurisdiction over the objection of RG & E, does not bestow otherwise nonexisting "core" jurisdiction over the Debtor's state law claims—neither in the Original Adversary Proceeding nor under the guise of counterclaims in Debtor's "duplicative" New Adversary Proceeding.

Second, RG & E emphasizes that since the time that the debtor initiated the Original Adversary Proceeding, RG & E has "actively, regularly and continuously" objected to this Court's adjudication of the Adversary Proceeding's third through fifth claims by the Debtor against RG & E, the same claims as asserted by the debtor in the New Adversary Proceeding.

Third, RG & E indicates that it "reluctantly" interposed its December 13, 1995 Answer to the Original Adversary Proceeding and its Amended Answer only *after* this Court found "core" jurisdiction over the Adversary Proceeding notwithstanding RG & E's "strenuous objection." In this regard, the Court notes the objection to jurisdiction cited in RG & E's Answer and quoted in the Findings of Fact herein. Further to this argument, RG & E stresses that it filed its Proof of Claim on May 28, 1996, *three days* before the May 31, 1996 deadline or Bar Date for filing proofs of claim and while its appeal of this Court's assertion of core jurisdiction was pending. Therefore, RG & E argues that the New Adversary Proceeding's Third through Fifth claims by definition are not "counterclaims by the estate against persons filing claims against the estate", within the meaning of a core matter pursuant to 28 U.S.C. § 157(b)(2)(C), since these same claims *preceded*, in the Original Adversary Proceeding, RG & E's Proof of Claim by over six months.

Fourth and finally, RG & E alleges that Debtor cannot maintain identical actions before this Court and for that reason the new Adversary Proceeding must be dismissed or stayed. In sum, for the foregoing reasons, RG & E requests that this Court reject the Debtor's attempt to "bootstrap" core jurisdiction over the state law claims Debtor asserted in the Original Adversary Proceeding and dismiss or stay the New Adversary Proceeding until the Original Adversary Proceeding is adjudicated to conclusion in the proper New York forum.

**b. The Court's Treatment of the Proof of Claim and Counterclaims under 28 U.S.C. § 157(b)(2)(B) and (C).**

In addressing the jurisdictional conflict which has arisen in this case by the filing of the Proof of Claim by RG & E and the consequent New Adversary Proceeding by the Debtor, this Court begins its analysis by looking to 28 U.S.C § 157(b)(2)(B) and (C) which provides in pertinent part:

(2) Core proceedings include, but are not limited to-

   (B) allowance or disallowance of claims against the estate .... and estimation of claims or interests for the purposes of confirming a plan under chapter 11 ...;

   (C) counterclaims by the estate against persons filing claims against the estate.

The Court must then address the following questions: (a) has RG & E by filing the Proof of Claim three days before the claims bar date, with its continuing objection to jurisdiction, and while this Court's finding of core jurisdiction was still the law of the case, consented or submitted to the jurisdiction of the bankruptcy court pursuant to 28 U.S.C. § 157(b)(2)(B) over its state law claims; and (b) is the Counterclaim asserting state law causes of action, by definition a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(C).

We hold that under the facts and procedural history of this particular case and upon review of applicable case law, RG & E cannot be said to have consented or submitted to the jurisdiction of this Court pursuant to 28 U.S.C. § 157(b)(2)(B) by the filing of its May 28, 1996 Proof of Claim. Moreover, the Debtor's Counterclaim asserting pre-petition state law causes of action is not for the reasons which follow, a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(C).

In arriving at its holding with respect to the above referenced issues, the Court finds it illuminating to look to the legislative history of § 157(b)(2)(C) as it existed with respect to counterclaims, under the former Bankruptcy Act, prior to enactment of The Bankruptcy Reform Act of 1978. As discussed by Professor Collier:

> Under the Act, the courts had developed the concept of jurisdiction by consent which could be evidenced by failing to object to the jurisdiction of the court when filing a response in the bankruptcy court to a complaint filed by a trustee, *or by filing a proof of claim.* Under the first type of consent, the defendant subjected itself to *any* kind of counterclaim filed by a trustee, including those arising under the avoiding powers and actions to which the trustee succeeded as successor of the bankrupt. *It was unclear, however, how far the consent evidenced by the filing of a proof of claim went. In Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467 [15 L.Ed.2d 391] (1966), the Supreme Court held that consent at a minimum subjected the claimant to judgment on a counterclaim filed by a trustee based on one of the avoiding powers, since such a counterclaim was part and parcel of the process of allowing and disallowing claims ... *The question is whether, in section 157(b)(2)(C). Congress has decided this issue by providing that the filing of a proof of claim subjects the claimant to core treatment of all counterclaims which may be filed by a trustee. Footnote 31 in the plurality opinion in Marathon at least leads to the conclusion that there are constitutional doubts as to whether the filing of a proof of claim can have such an effect,* If such is not the case, the counterclaim will be treated as a related matter and the dispositive order entered by the district court pursuant to 28 U.S.C. § 157(c). 1 *Collier on Bankruptcy* ¶ 3.02[3][d] (15th Ed.1996). (Emphasis added)

The Court notes a recognized split of authority on the issue of whether *all* counterclaims by a debtor asserted in response to a proof of claim filed by a creditor are, by definition, "core" within the meaning of 28 U.S.C. § 157(b)(2)(C). In discussing the split, Collier notes:

> Some cases have held that a counterclaim arising out of the same transaction as that which gave rise to the proof of claim is a core proceeding, and that filing counterclaims to a trustee's complaint gives the bankruptcy court core jurisdiction to try the claims of the trustee as well as the counterclaims. Other cases hold that *Marathon*-type claims cannot be asserted as counterclaims to proofs of claim. The matter is still unsettled. *Id.*

Preliminarily, the Court recognizes that the Third Circuit in *Southeastern Sprinkler Co. v. Meyertech Corp., (In re Meyertech Corp.),* 831 F.2d 410 (3d Cir.1987), held that the debtor's counterclaim, asserting state law causes of action, in that case was a core proceeding. However, as applied to the facts herein, we find the Third Circuit's 1987 holding in *Meyertech* distinguishable. In *Meyertech,* an installer of water sprinkler systems sought to recover damages resulting from the debtor's breach of contract to supply fittings for the sprinkler system. The debtor, Meyertech, filed a petition for reorganization under Chapter 11 and *in response,* Southeastern filed a proof of claim for losses incurred in the construction project where Meyertech's product was being utilized. Meyertech then filed an objection to the proof of claim and asserted counterclaims on an open account for goods sold. The Bankruptcy court entered judgment in favor of Meyertech. Southeastern filed a notice of appeal to the district court urging vacation of the award to Meyertech contending the matter was not a core proceeding as defined by 28 U.S.C. § 157(b)(2) and requested the dis-

trict court render additional findings of fact consistent with its *de novo* power of review of non-core matters. The District Court denied the request for *de novo* review, affirming the bankruptcy court's finding. On appeal, the Third Circuit in finding the matter to be core, stated in pertinent part, that the state law contract matter in that case had been *"initiated when Southeastern filed its proof of claim."* 831 F.2d at 417.

This Court distinguishes *Meyertech* on its facts from the case *sub judice*. The Court notes the following specific quote from the *Meyertech* Court which highlights this distinction:

> We thus conclude that Southeastern's cause of action based upon state law is correctly characterized as a claim against the bankruptcy estate of Meyertech. As such, the litigation of its merits is a core proceeding under the bankruptcy judge's jurisdiction as provided by § 157(b)(2)(B). *The filing of the claim by Southeastern created this action in bankruptcy court, and this is the proper forum for its adjudication.* 831 F.2d at 417. (emphasis added).

By contrast, here, unlike *Meyertech*, the filing of the Proof of Claim by RG & E did not in any respect "initiate" or "create" the causes of action now asserted in the Counterclaim. To the contrary, the actions existed *prior to* the filing of this Proof of Claim in the context of the Original Adversary Proceeding, and have heretofore been specifically designated as "non-core" by the New Jersey District Court. Moreover, the existence of these claims not only preceded the filing of the Proof of Claim in the debtor's Chapter 11, but were litigated pre-bankruptcy in both the New York State and Federal District Courts.[10]

In reaching its decision, the Court recognizes the general rule cited by the debtor that under the Supreme Court's decision in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) "by filing a claim against a bankruptcy estate, the creditor triggers the process of allowance and disallowance of claims thereby subjecting himself to the bankruptcy court's equitable power." 498 U.S. at 44, 111 S.Ct. at 331 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (bankruptcy court cannot conduct a jury trial in a non-core proceeding)); see also *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (holding that a creditor's Seventh Amendment right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor submitted a claim against the estate). The crucial distinction being presented by RG & E however is that the Ninth Circuit's holding in *In re Castlerock Properties*, 781 F.2d 159 (9th Cir.1986), cited favorably by the Third Circuit in *Beard v. Braunstein*,[11] rejected outright application of the rule to the facts of that case in which the debtor argued that consent could be implied from the creditor's defensively filing a

---

**10.** In further distinguishing *Meyertech*, the Court notes that in that case, the creditor *immediately* filed its proof of claim and commenced the adversary proceeding against the debtor as opposed to the case at bar wherein the Proof of Claim was filed *three days before the bar date* for filing a proof of claim and with RG & E's continuing objection to jurisdiction stated therein. Moreover, unlike RG & E, the Court specifically noted in *Meyertech* that the creditor had not raised constitutional challenges but only the application of [§ 157(b)(2)] to the facts of the case." 831 F.2d at 417.

**11.** The Third Circuit in the analogous case of *Beard v. Braunstein* has held that when a defendant's compulsory counterclaim is filed only *after* his motion to dismiss for lack of jurisdiction is denied, Braunstein had not waived his objection to jurisdiction by interposing that counterclaim. 914 F.2d at 442. The Third Circuit reasoned:

> We agree that the better rule ... is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim. 6 Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d § 1416 at 125 (1990). See also *In re Kaiser Steel Corp. v. Frates*, 911 F.2d 380 (9th Cir.1990); *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 n. 4 (9th Cir.1967) (a finding that a defendant has waived his objections to jurisdiction and venue by interposing a compulsory counterclaim is something less than fair play). This Court recognizes the distinction drawn by the debtor and GECC to the Third Circuit's holding in *Beard* that *Beard* did not involve the filing of a proof of claim. However, the court finds the rationale underlying the decision in *Beard* instructive.

proof of claim following the bankruptcy court's assertion of core jurisdiction. The Court's rationale is on point:

> The only one of the specific provisions which might apply to Castlerock's counterclaims is section 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate." However, *it seems unfair under the facts of this case to categorize the counterclaims as falling within this provision. The counterclaims were asserted before the Proof of Claim was filed. Piombo would not have filed the Proof of Claim if the bankruptcy court had declined jurisdiction over the counterclaims.* 781 F.2d at 160.

In rejecting the debtor's argument in that case, the Ninth Circuit stated:

> *Castlerock* cites no case in which the filing of the proof of claim *followed the bankruptcy court's assertion of jurisdiction over the counterclaims despite objections from the creditor.* The purpose of the rule, to prevent a bankruptcy trustee from having to split a cause of action by defending against the claim in the summary proceedings and then seeking affirmative relief in a plenary suit, *Peters,* 275 F.2d at 925, is not served by forcing the creditor to file a proof of claim as a defensive maneuver, thereby conferring jurisdiction on the bankruptcy court. Asserting an affirmative defense does not constitute consent. *Mohawk,* 46 B.R. at 466. By analogy, Piombo's filing the proof of claim should not be deemed consent. Cf. *Cline v. Kaplan,* 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89

L.Ed. 97 (1944) (no consent where claimant resisted petition for turnover order and made formal protest against exercise of summary jurisdiction); *Dexter v. Gilbert (Matter of Kirchoff Frozen Foods, Inc.),* 496 F.2d 84, 86 (9th Cir.1974) (no consent when relief sought in bankruptcy court save in the event the trustee first prevailed in the dispute initiated by him). 781 F.2d at 162–163.

At the outset, this Court rejects counsel for the Debtor's argument that the Third Circuit's decision in *Travellers International A.G. v. Robinson,* 982 F.2d 96, 100 (3d Cir. 1992) is controlling here and stands for the broad proposition asserted by Debtor and GECC that the filing of a defensive proof of claim will always result in the invocation of a bankruptcy court's equitable jurisdiction to adjudicate the claim and related counterclaim as a part of the claims allowance process.[12]

Upon a detailed review of the *Travellers'* decision, this Court accepts the argument of RG & E and finds the case distinguishable.[13] In short, this Court finds that the *Travellers* Court held only that in reliance upon *Langenkamp,* once a creditor files a claim against a bankruptcy estate, he loses his right to a jury trial in regard to an underlying preference action. 982 F.2d at 99. It does not mandate a finding of submission to jurisdiction by the filing of a proof of claim with respect to the non-core claims asserted in either the Original or New Adversary Proceedings under the facts and circumstances surrounding this case.

---

**12.** In *Travellers,* the Third Circuit held in the context of a seventh Amendment right to a jury trial, whereas, in that case, a creditor has filed a claim, even though the claim is couched in protective language and is contingent, that creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial.

**13.** First, *Travellers,* involved a traditional preference action which is indisputably a core proceeding, and did not involve an action based upon a state law contract claim relating to a pre-petition contract which was the subject of a pending pre-petition state court action or questions concerning the bankruptcy court's jurisdiction over such claims. The issue in that case was whether a creditor which had filed a proof of claim based upon its pre-petition judgment against the debtor

and in which the creditor had expressly reserved its right to a jury trial in the preference proceeding, had nonetheless waived its right to a jury trial and submitted to the bankruptcy court's equitable power to adjudicate the preference claim.

Second, no objection was made to the bankruptcy court's core jurisdiction by the creditor in response to the preference action *prior to* its filing of its proof of claim. That is, in *Travellers,* only *after* it had filed its proof of claim reserving its right to a jury trial did the creditor file a motion to withdraw reference of the preference action arguing it was entitled to a jury trial and for the first time, alternatively that the preference action could only be adjudicated by an Article III Judge. 982 F.2d at 97. (RG & E Reply, filed October 21, 1996, at p. 3).

Ultimately, in finding as it does, this Court has reviewed the line of cases cited by the debtor distinguishing the holding in *Castlerock*, particularly the recent Second Circuit decision in *S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont*, 45 F.3d 702 (2d Cir.1995), wherein the Second Circuit held that a creditor became a party under the court's core jurisdiction when it filed its proof of claim resulting in an adversary proceeding, and by filing its proof of claim, the creditor also necessarily submitted to the court's equitable power to resolve its claim. In that case, the Second Circuit rejected as unpersuasive the argument put forth by the City that under the Ninth Circuit's decision in *Castlerock*, it did not consent to a determination of its claims by the bankruptcy court, and preserved its right to object to the bankruptcy court's jurisdiction.

However, in distinguishing the facts in *Castlerock* from the facts therein, the Second Circuit cited a number of considerations which applied in *Castlerock* and also apply here:

> Again, without deciding the validity of *Castlerock*, we note that the case at bar remains distinguishable from *Castlerock*. In the latter case, the creditor: (1) moved for relief from the automatic stay, (2) moved to have the district court withdraw its reference of the claims to the bankruptcy court, (3) continually objected to the bankruptcy court's jurisdiction, and (4) did not file a proof of claim until after all other reasonable measures had failed and the bankruptcy court had taken jurisdiction. In sum, the creditor in *Castlerock* argued throughout in a manner that was inconsistent with acceptance of the bankruptcy court's jurisdiction. 45 F.3d at 707.

Like the creditor in *Castlerock*, RG & E has unequivocally acted throughout this case in a manner that is inconsistent with acceptance of this Court's jurisdiction over the third through the fifth claims of the Original Adversary Proceeding. RG & E has filed an application for stay relief to prosecute the pending state court action, continually objected to the bankruptcy court's jurisdiction and did not file a proof of claim until the claims bar date was only three days away. There-

fore, it is the specific finding of this Court that RG & E filed its Proof of Claim only after all reasonable measures had been taken objecting to this Court's jurisdiction, including by its application to transfer venue or abstain, in its Answers and by the Appeal of this Court's December 7, 1995 Bench Opinion asserting core jurisdiction. In sum, the Court accepts RG & E's assertion that it is the procedural history of this case and not the mere filing of the May 28, 1996 Proof of claim that is controlling.

Finally, in its review of case law, the Court notes the very recent Ninth Circuit decisions in *In re Conejo Enterprises, Inc.*, 71 F.3d 1460 (9th Cir.1995) (*Conejo I* ) and 96 F.3d 346 (9th Cir.1996)) (*Conejo II* ). In *Conejo II* the Ninth Circuit held that because the bankruptcy court's decision denying relief from the automatic stay was made prior to the creditor's filing its proof of claim, the case had to be remanded to the bankruptcy court for reconsideration of stay relief in light of the filing of the proof of claim. In pertinent part, the Ninth Circuit ultimately found that the Supreme Court's decision in *Langenkamp* precludes simplifying the prior decision of the Ninth Circuit *In Castlerock* to a "broad rule that a creditor never consents to bankruptcy core jurisdiction by filing a proof of claim." 71 F.3d at 1466. As applied to the facts of *this* case, this Court agrees with the majority opinion in *Conejo I* to the extent that it denies application of a "broad rule" under *Castlerock* in light of the Supreme Court's decision in *Langenkamp*, however as applied to the facts herein, this Court finds the dissenting opinion of Circuit Judge Fletcher in both *Conejo I* and *Conejo II* relevant. In *Conejo I* she stated:

> Had the bankruptcy court abstained as it was required to do, the appellee would not be in the Kafkaesque position the majority imposes on it today. Its contract claim is a state law claim. Absent bankruptcy, the claim could not be pursued in a federal forum. It was commenced in a state forum of appropriate jurisdiction prior to bankruptcy. It was capable of timely adjudication. It was a non-core proceeding. . . .

Where our disagreement arises is over the effect of the filing of a creditor's claim. This occurred after the bankruptcy court's decision. . . .

The district court, I submit, rightly reversed the bankruptcy court. The majority holds otherwise because Benedor filed a creditor's claim. Benedor, obviously frantic, on the last extended date to file a creditor's claim, the very day on which the district court heard Benedor's appeal, filed a claim as a defensive matter. The district court quite properly ruled that the filing did not transmute the state-law contract proceeding in state court into a core proceeding in the bankruptcy court under the circumstances of this case. 71 F.3d at 1468 (*Conejo I* ) (Fletcher dissenting).

In *Conejo II*, Judge Fletcher again opined on dissent:

The majority also makes much too much of Benedor's having filed a claim. The filing of a claim does not convert the state court action into a core proceeding and should not affect whether the stay should be lifted. The district court had it entirely right. 96 F.3d at 353–54 (*Conejo II* ). (Fletcher, Partial Concurrence, Partial Dissent).

In ultimately concluding that the parameters of the Supreme Court decision in *Marathon* are controlling as applied to the facts herein, this Court makes a final reference to the holding of the Bankruptcy Court in the case of *In re Yagow*, 53 B.R. 737 (Bankr. D.N.D.1985), wherein the court found that the debtor's counterclaim against a creditor based on breach of a financing agreement was not a core proceeding despite 28 U.S.C. § 157(b) (2)(C).

In discussing jurisdiction under that subsection, the bankruptcy court stated:

The language of this section may be expansively interpreted so as to include as a core matter any cause of action if asserted by a debtor as a counterclaim. Such an expansive reading would completely emasculate the jurisdictional proscriptions of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* and would, in the view of this court, render the requirements of an independent jurisdictional basis all but meaningless. . . . The debtor's counter-

claim does not have its roots in the Bankruptcy Code and is not the type of action which is dependent upon the event of bankruptcy for its validity. 53 B.R. at 739.

In sum, we hold that the broad reading of 28 U.S.C. § 157(b)(2)(B) and (C) urged by the debtor must be tempered by the *Marathon* decision. For that reason, core jurisdiction over the debtor's Counterclaims asserting state court causes of action, which have been previously determined to be non-core by the New Jersey District Court, do not under the facts and procedural history of this particular case, constitute "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2)(C).

## II. The Issues On Remand

### a. The *PPA's Forum Selection Clause*

Pursuant to its Order of August 5, 1996, the District Court remanded to this Court for a determination of whether, in light of the District Court's finding that Claims III through V of the Original Adversary Proceeding were non-core "related-to" matters, the PPA's forum selection clause must be enforced.

In remanding, Judge Bassler stated:

The existence of a choice of forum clause does not conclusively establish a New York court as the forum. Instead, the court must weigh countervailing factors in order to determine if the clause should be enforced. In light of the Bankruptcy Court's greater familiarity with the case, this court is reluctant to make the initial evaluation even though the bankruptcy debtor has a tough row to hoe under *In re Diaz Contracting*, 817 F.2d 1047 (3d Cir.1987). (Bassler Opinion, August 5, 1996 at p. 19).

Judge Bassler, noted that the Third Circuit in the case of *In General Engineering Corp. v. Martin Marietta Alumina Inc.*, 783 F.2d 352 (3d Cir.1986), held that the law of the state or other jurisdiction whose law governs the construction of the contract generally applies to the enforceability determination unless "a significant conflict between some federal policy or interest and the use of state law exists." (Bassler Opinion, August

5, 1996 at p. 20, citing 783 F.2d at 356). In determining the enforceability of the PPA's forum selection clause to the dispute herein, he went on to recognize that the courts of New York as well as New Jersey, recognize the standard for determining enforceability of forum selection clauses set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ Under the standard set forth in *M/S Bremen*, a forum selection clause "is *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. In the case of *In re Diaz*, 817 F.2d 1047, 1050 (3d Cir.1987), the Third Circuit held that, as previously discussed by former Chief Judge Gibbons of this Circuit in the case of *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir.) *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315, (1983):

> a forum selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement established (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. 709 F.2d at 202.

Applying this test to the facts herein, the New Jersey District Court has held that the Third Circuit's reasoning and ruling in *Diaz* is controlling. (Bassler Opinion, August 5, 1996 at p. 21). In *Diaz*, the Third Circuit found that the debtor had not shown that under *M/S Bremen* standard, enforcement of a forum selection clause would be unreasonable enough to justify nonenforcement. The *Diaz* Court rejected the debtor's assertions in that case that it would incur tremendous expenses as a result of relocating the litigation. 817 F.2d at 1052–53. ("Mere inconvenience or additional expense is not the test of unreasonableness, since it may be assumed that the plaintiff received under contract consideration for these things)." (Bassler Opinion, August 5, 1996 at p. 21 citing *Diaz*

quoting *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 344 (3d Cir. 1966)). In addition, the Third Circuit cautioned in *Diaz* that "bald assertions do not establish the manifest and grave inconvenience contemplated by *M/S Bremen* and its progeny." 817 F.2d at 1052, n. 11.

In thus rejecting the arguments of Kamine in this case that because its principal witnesses are located in New Jersey, the proper venue would be New Jersey, Judge Bassler stated:

> The fact that debtor's lenders, employees and meetings occur in New Jersey has no bearing on the contract action between RG & E and Debtor; if this matter were core, and if this matter were being decided simultaneously with the bankruptcy petition, these factors would have bearing on whether to enforce the forum selection clause. But extraneous employees, lenders, and meetings do not figure into the agreement between RG & E and Debtor. (Bassler Opinion, August 5, 1996, at p. 22).

Moreover, in addressing the "heavy burden" under *M/S Bremen* that the debtor must demonstrate that enforcement would be unreasonable, the District Court specifically found that as to the first prong of considerations cited above, "the clause was not the product of fraud or overreaching" and that as to the second prong, "New Jersey's interest in hearing the breach of contract is minimal especially when compared to the interest of New York; hundreds of thousands of ratepayers could be affected by a change in electricity prices." (Bassler Opinion, August 5, 1996, at p. 22). Finally, as to the third prong, Judge Bassler concluded "a New York forum would not be unreasonable based solely on the fact that Debtor had already commenced an action in the Western District of New York, and it is doubtful that a location obviously not unreasonable at that time has suddenly become overly burdensome." *Id.*

■ Upon remand, in light of Judge Bassler's ruling regarding the non-core "related to" nature of Claims III through V, it is the opinion of this Court that the PPA's forum selection clause must now, under the controlling case of *In re Diaz*, be enforced. Like

the District Court, we find that the Debtor has not satisfied its "heavy burden" to prove that "trial in the contractual forum will be so gravely difficult and inconvenient that [the debtor] ... will for all practical purposes be deprived of [its] day in court." *Diaz*, 817 F.2d at 1052. Notwithstanding the inconvenience argument which has been rejected by both the district and this Court, the only other primary argument put forth by Kamine in opposition to enforcement of the forum selection clause concerns the "strain" on Debtor's relationship with GECC that will allegedly be occasioned by the further delay of this case should the forum selection clause be enforced. (Declaration of Harold N. Kamine in Opposition to the Application of RG & E For an Order Transferring Venue, dated December 4, 1995, ¶ 9).[14] Upon consideration, this Court finds Debtor's argument in this regard unpersuasive. Given both the complexity of the underlying issues involved in this case as well as the length of time which must be contemplated for *de novo* review of any finding of fact or conclusion of law by this Court as to the resolution of non-core Claims III through V, we agree with RG & E that any disparity between the time required for adjudication in New York and in this Court is minimal. Thus, the forum selection must be enforced as to non-core "related to" claims of the Amended Original Adversary Complaint.

### b. *Mandatory Abstention Pursuant to 28 U.S.C. § 1334(c)(2)*

As to the remaining question of whether to have the dispute over the non-core claims ultimately adjudicated in either the New York State or Federal Court, this Court will make a determination, based in part, upon analysis of the mandatory abstention provision 28 U.S.C. § 1334(c)(2) which provides in pertinent part:

> Upon timely motion of a party in a proceeding based upon a State law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■ Pursuant to 28 U.S.C. § 1334(c)(2), this Court is thus required to abstain if the following criteria are met: (1) the proceeding is based on state law or a state cause of action; (2) the matter is a "related to" proceeding rather than a proceeding "arising under" or "arising in" a Title 11 case; (3) the action could not have been commenced in a federal court absent bankruptcy; (4) an action in state court has been commenced; and (5) the state court action can be timely adjudicated. *In re Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. 768, 778 (S.D.Ohio 1991).

■ Judge Bassler in his August 5, 1996 Opinion indicated as follows:

> The final issue the court addresses is whether the Bankruptcy Court should have mandatorily abstained from hearing claims three through five of the Adversary Proceeding. As will be set forth more fully below, the record before the court does not allow it to make the factual determination of whether the pending state court action could be "timely adjudicated"

---

14. Harold Kamine states, in pertinent part, in his Declaration at ¶ 9:

> If RG & E's motion is granted, the Debtor is faced with the prospect that the litigation with RG & E will be drawn out for one year or more which will result in an operating shortfall during such period of as much as $20,000,000.00. Given the extent of the projected losses, any delay in the prosecution of the Debtor's claims against RG & E, as would be occasioned by the granting of RG & E's motion, will severely strain, if not break, the ability of the Equity interests to retain, on a long term

> basis, the functional control of the Debtor that GECC is now prepared to cede back. In addition, an early resolution of the adversary proceeding as was contemplated by the court's comments on November 21st represents the only prospect to minimize the Debtor's ongoing operating losses and thereby give the debtor greater flexibility in trying to amicably resolve its claims against RG & E in a manner that will enable it to reorganize and meets its obligations to secured and unsecured creditors as well as to retain value for the $5,000,000.00 that the Equity Interests have at stake.

within the meaning of 28 U.S.C. § 1334(c)(2). Because it is unable to make this determination conclusively on the record before it, the court is also unable to conclude that the mandatory abstention provisions apply to the facts of this case. (Bassler Opinion, August 5, 1996, at p. 9).

The sole issue on remand therefore as it applies to mandatory abstention is whether the non-core claims of the Original Adversary Proceeding can be timely adjudicated in the New York State Court. Upon consideration, notwithstanding the procedural differences between this Court and the New York State Court as indicated by the debtor and cited herein, this Court finds in favor of timely adjudication for the reasons which follow.

First, as Judge Bassler noted in his Opinion, this Court in originally finding the claims to be core did not take into consideration the length of time required for a *de novo* review by the District Court that would be required should this Court render findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1) with respect to the non-core claims. Taking this factor into consideration, this Court finds that the action can certainly be timely adjudicated in New York. Second, as Judge Bassler pointed out, the discovery which has taken place thus far in the Original Adversary Proceeding can now be transferred to the pending state court action in New York. Third, the essence of the non-core claims are presently being litigated as Kamine's counterclaims in the NYS Action. That action is currently pending and prior to the debtor's filing for bankruptcy, had been actively litigated for over one year. Moreover, in response to the alleged "procedural maneuvering" of RG & E feared by the debtor should this action be allowed to continue in New York State Court, this Court notes that, as asserted by RG & E, subsequent to the commencement of the NYS Action, it was Kamine who fought discovery efforts and forced RG & E to seek an order compelling disclosure. It was the Debtor who further filed the summary judgment motion in the NYS Action and then brought the interlocutory appeal of the denial of that motion rather than proceeding to trial. Moreover, it was also the Debtor who filed the antitrust action in the WDNY one week after filing for summary judgment in the state court. In short, given the Debtor's involvement in the protracted litigation history of these matters in both the state and federal court, Debtor cannot now assert that the state court action cannot be "timely adjudicated" within the meaning of 28 U.S.C. § 1334(c)(2).

### *CONCLUSION*

In summary, upon remand, this Court ultimately finds that the filing of the May 28th Proof of Claim by RG & E and the consequent New Adversary Proceeding (Adv. No. 96–2559) by the Debtor does not, given the facts and procedural history of this particular case, trigger new "core" jurisdiction within the meaning of 28 U.S.C. § 157(b)(2)(B) and (C) over the state law claims of either the Original or the New Adversary Proceeding, so that this Court must then consider the issues as remanded by Order of the District Court dated August 5, 1996.

Upon remand, this Court finds that given the District Court's holding that Claims III through V of the Original Adversary Proceeding are non-core "related to" matters, the PPA's New York forum selection clause must be enforced.

Further, upon remand, this Court finds for the reasons cited herein, that the non-core issues raised by Claims III through V of the Debtor's Original Adversary Proceeding (Claims IV through VI of the Amended Complaint) (Adv. No. 95–2909) can be "timely adjudicated" within the meaning of 28 U.S.C. § 1334(c)(2) by the New York State Court. Therefore, this Court mandatorily abstains from hearing those claims.

Thus, this Court retains jurisdiction over the debtor's Chapter 11 case as well as claims I through III of the debtor's Amended Original Adversary Complaint (Adv. No. 95–2909). This Court's determination of these core matters will however abide resolution of the New York State Court trial with respect to claims IV through VII of the Amended Original Complaint.

RG & E's Motion to Stay the New Adversary Proceeding (Adv. No. 96–2559) pending resolution of the New York State Court Trial is hereby granted.